1    Richard Mah, Esq., SBN 149148
Aaron J. Flores, Esq., SBN 268279
2    John L. Jones II, Esq., SBN 225411
HUNT ORTMANN PALFFY
3    NIEVES DARLING & MAH, INC.
301 North Lake Avenue, 7th Floor
4    Pasadena, California 91101-1807
Phone:  (626) 440-5200    Fax:  (626) 796-0107
5
Attorneys for Reliable Design and Construction
6    Inc.

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10               **LOS ANGELES DIVISION**

11   In re                                    Case No. 2:15-BK-10239-SK

12   HUE CHAU AKA JIMMY CHAU,                  Chapter 13

13                Debtor.

14                                             **SUPPLEMENTAL OBJECTION TO
                                             CONFIRMATION OF THE DEBTOR'S
15                                             CHAPTER 13 PLAN**

16                                             **Section 341(a) Meeting**
                                             Hearing Date:    February 13, 2015
17                                             Hearing Time:    8:30 a.m.
                                             Place:    915 Wilshire Boulevard
18                                                      Suite 1050
                                                      Los Angeles, CA 90017
19                                             Hearing Room:    Room No. 1

20                                             **Confirmation Hearing**
                                             Hearing Date:    June 24, 2015
21                                             Hearing Time:    10:00 a.m.
                                             Place:    255 East Temple Street
22                                                      Los Angeles 90012
                                             Courtroom:    1575
23                                             Floor:    15th

24

25

26

27

28

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

729464.1 JJ 3427.003

1   Creditor Reliable Design and Construction Inc. ("Reliable") objects to the Chapter 13 Plan

2   filed herein.

3   I.   **STATEMENT OF FACTS**

4   On December 23, 2011, the Debtor and Reliable entered into a written agreement for the

5   construction of a new two-story single family home with three bedrooms and three bathrooms.

6   The plans for the construction of the home were prepared by an unlicensed architect. Flores

7   Decl., ¶ 3.

8   In the subsequent months, the Debtor began interfering with the project by, among other

9   things, attempting to renegotiate subcontractor invoices, hiring additional subcontractors in

10   violation of the agreement, demanding certain work be done for free, and refusing to pay invoices

11   when due, among other things. Flores Decl., ¶ 3.

12   On July 23, 2013, Reliable submitted its "Demand for Arbitration Before JAMS" to Hue

13   Chau aka Jimmy Chau. Thereafter, the matter was referred to JAMS, Inc. ("JAMS") for

14   arbitration. Flores Decl., ¶ 4.

15   On September 24, 2013, Reliable served its "Notice of Original Contractor's Intent to File

16   10-Day Stop Work Order". Thereafter, on October 2, 2013, Reliable served notice of its 10-Day

17   Stop Work Order. Flores Decl., ¶ 5.

18   When the Debtor failed to pay within the 10-day period, Reliable eventually stopped work

19   on the construction project. Flores Decl., ¶ 6.

20   The Debtor engaged in a number of tactics to delay the eventual resolution of the State

21   Arbitration Action, including the following:

22   • Failing to pay the initial arbitration fees, which resulted in a 7 month delay.

23   • Canceling the first mediation at the last minute without rescheduling.

24   • Changing counsel 2 days before the March 2014 arbitration dates, resulting in a 4

25   month delay.

26   Flores Decl., ¶ 7.

27   Each of the above delays resulted in an increase in Reliable's attorney's fees and costs.

28   Initially, the arbitration hearings were set for December 4, 5 and 6, 2013. After several

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

1  continuances and mediation described above, the arbitration hearings were finally held on July 28

2  – August 1, 2014 and August 7, 2014.  Flores Decl., ¶ 8.

3       On January 23, 2014, Reliable recorded a mechanic's lien on certain real property of the

4  Debtor located at 14146 Benbow Street, Baldwin Park, CA 91706.  The amount of the lien secured

5  by the Benbow property is $157,703.10.  Flores Decl., ¶ 9.

6       On April 22, 2014, Reliable recorded a Notice of Extension of Time to Foreclose Lien (the

7  "Extension Notice"), which extended the deadline for Reliable to foreclose on the mechanic's lien.

8  The Extension Notice was signed by the Debtor herein.  Flores Decl., ¶ 10.

9       On January 23, 2015, Reliable filed its Notice of Perfection of Mechanic's Lien Pursuant

10 to 11 U.S.C. §§ 546(B) And 362(B)(3); Demand For Compliance With 11 U.S.C. § 363 with this

11 Court ("Notice of Perfection").  [Docket No. 13].  Flores Decl., ¶ 11.

12      On February 3, 2015, Reliable filed its motion for relief from stay in order to proceed with

13 the arbitration.  [Docket No. 15].

14      On February 26, 2015, this Court entered its order granting Reliable's motion for relief

15 from stay.  [Docket No. 29].  By the terms of the order, Reliable was granted permission to

16 continue the arbitration and to file a petition to confirm the final arbitration award.  Reliable was

17 also granted permission to otherwise proceed under applicable nonbankruptcy law to final

18 judgment in any nonbankruptcy forum, but would still be subject to the stay with respect to any

19 enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

20      On May 4, 2015, George D. Calkins, II, the arbitrator herein (the "Arbitrator"), issued his

21 Final Award (the "Final Award").  The Final Award set forth the following findings and awards:

22  •    The Contract between Reliable and the Debtor was an integrated contract and was

23       fully negotiated;

24  •    The Debtor inappropriately obtained access to the construction payment records;

25  •    The Debtor breached the contract by refusing to pay Reliable for work that had

26       been performed (including change orders);

27  •    Reliable was the prevailing party for purposes of determining costs, interest, and

28       attorney's fees.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

729464.1 JJ 3427.003

SUPPLEMENTAL OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

- Reliable was awarded damages in the amount of $83,203.10 (consisting of an award of $87,703.10 less $4,500 for lost rentals).

- Reliable was awarded statutory interest in the amount of $10,805.51.

- Reliable was awarded attorney's fees in the amount of $178,500.

- Reliable was awarded expert fees and costs in the amount of $104,353.22 (consisting of an award of $25,000 for expert fees and $79,353.22 for costs).

Flores Decl., ¶ 13.

On May 6, 2015, Reliable filed its Proof of Claim in this matter.  As of the petition date, Reliable's claims against the Debtor consist of the following:

- Damages in the amount of $83,203.10 (consisting of an award of $87,703.10 less $4,500 for lost rentals).

- Statutory interest in the amount of $10,805.51.

- Attorney's fees in the amount of $178,500.

- Expert fees and costs in the amount of $104,353.22 (consisting of an award of $25,000 for expert fees and $79,353.22 for costs).

Flores Decl., ¶ 15.

Based on the above, the Debtor owes Reliable $376,861.83.  The foregoing amount is secured by Reliable's mechanic's lien in the amount of $157,703.10.

Even if the total amount were unsecured, the Debtor would have to increase the payment through the Plan to Reliable to approximately $6,281.03 per month in order to pay Reliable over a period not to exceed sixty (60) months at the 0% interest rate currently provided for in the Plan. However, because Reliable is entitled to interest on its claim, the preceding amounts will need to increase in order to pay Reliable the net present value of its claim.

## II.   **ARGUMENT**

In order to be confirmed, a chapter 13 plan must comply with the provisions of Section 1325 of title 11 of the United States Code (the "Bankruptcy Code").  As more fully detailed below, the Debtor's chapter 13 plan (the "Plan") cannot be confirmed as proposed.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

**A.    The Plan Does Not Meet The Full Value Requirement.**

Pursuant to Section 1325(a)(5)(B)(ii) of the Bankruptcy Code, creditors must pay a secured creditor the allowed amount of its claim.  In this case, the Debtor has failed to include the full amount of Reliable's secured claim ($157,703.10) in his schedules.  Reliable's status as a secured creditor is not in dispute.  The lien was recorded more than a year ago and the Debtor personally signed an extension of time relating to Reliable's ability to foreclose on the lien.  As a result, the Plan fails to satisfy Section 1325(a)(5)(B)(ii).  In order  to confirm a plan, the Debtor must amend his schedules to include the full amount of Reliable's secured claim and a must file an amended plan that provides payment of that claim.

**B.    The Plan Does Not Properly Account For The Value Of Reliable's Claim.**

As stated above, the total value of Reliable's claim is at least $3376,861.83, of which, $157,703.10 is secured by Reliable's mechanic's lien.  Even if the total amount of Reliable's claim were unsecured, the Debtor would have to increase the payment through the Plan to Reliable to approximately $6,281.03 per month in order to pay Reliable over a period not to exceed sixty (60) months at the 0% interest rate currently provided for in the Plan.  However, Reliable **is** entitled to interest on its claim.  An appropriate discount rate, which was not included in the Plan, would necessarily increase the minimum monthly payment amount.

**C.    The Plan Is Not Proposed In Good Faith.**

The timing of the bankruptcy and the near complete lack of third party creditors other than Reliable are evidence that the bankruptcy case was filed in bad faith.  Reliable is the only creditor with an unsecured claim that is listed in the schedules, and, for all practical purposes, is the **only** creditor that will be impaired under the Debtor's proposed chapter 13 plan.  The chapter 13 petition was filed in the evening, just five days prior to the deadline for filing an opposition to Reliable's motion for attorney's fees.  Based on the foregoing, it is clear that the filing was specifically made to delay, hinder and interfere with the prosecution of the State Arbitration

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

1  Action.  The Debtor has a history of engaging in tactics to delay the eventual resolution of the

2  State Arbitration Action, including the following:

- Failing to pay the initial arbitration fees[1], which resulted in a 7 month delay.

- Canceling the first mediation at the last minute without rescheduling.

- Changing counsel 2 days before the March 2014 arbitration dates, resulting in a
  4 month delay.

7  Moreover, the full amount of Reliable's secured claim is not listed in the Debtor's

8  schedules even though Reliable has a recorded mechanic's lien against the property of the Debtor

9  located at 14146 Benbow Street, Baldwin Park, CA 91706.

10  Cases with similar fact patterns have been held to be in bad faith.  In *In re Chinichian*, 784

11  F.2d 1440 (9th Cir. 1986), the Ninth Circuit held that a relevant consideration with respect to

12  whether a Chapter 13 case has been filed in bad faith is "whether 'the debtor only intended to

13  defeat state court litigation."  *Id*. at 1445-1446.  That is precisely what happened here.

14  **D.**    **The Debtor Is Distributing Less To The Allowed Unsecured Creditors Than**

15  **They Would Receive Under A Chapter 7 Liquidation.**

16  Every chapter 13 plan must provide that each holder of an allowed unsecured claim will

17  receive property having a value (as of the effective date of the plan) that "is not less than the

18  amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7

19  of this title on such date[.]" 11 U.S.C. § 1325(a)(4).

20  The Debtor lists five properties in his schedules.  Of the five, four list a combined total of

21  $288,715 in equity that could be distributed to unsecured creditors.  That amount is almost

22  certainly understated, as the Baldwin Park property is likely worth substantially more than the

23  $165,000 that the Debtor has listed.  The contract for the construction of the Benbow property,

---

[1] Reliable, however, did timely pay for its share of the arbitration fees.

Hunt Ortmann Palffy
Nieves Darling & Mah, Inc.
301 North Lake Avenue, 7TH Floor
Pasadena, California 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

1    which is at the heart of the State Arbitration Action, was for $508,000.  That project is now

2    approximately 68% complete.[2]

3        Although slightly more than 30% of the project remains, it is reasonable to believe that the

4    property value will be substantially greater than $165,000.  A two-story three bedroom, three bath

5    house is significantly larger than any other home in the area.  Flores Decl., at ¶ 20.  Thus, a

6    valuation of even one-half of the contract amount would provide far more value to creditors than

7    the amount that was listed in the Debtor's schedules.

8        Under the best-interests-of-creditors (or liquidation) test, all property distributed under a

9    plan must have a certain value "as of the effective date of the plan," 11 U.S.C. § 1325(a)(4).  In

10   this case, "application of the liquidation test requires that creditors receive payments having a

11   *present value* at least equal to what they would receive in a chapter 7 case." *In re Plascencia*, 354

12   B.R. 774, 782 (Bankr. E.D. Va. 2006) (emphasis in original).  Here, the Debtor does not provide

13   **any** interest rate, which means that the present value of the cash flows provided to Reliable will be

14   (at a minimum) less than the rate of inflation.  Put another way, Reliable will be paid less than the

15   total value of its claim.

16       Finally, "[u]nder Chapter 7, a trustee in bankruptcy would have the power to avoid

17   fraudulent and preferential transfers, thereby increasing the assets in the estate and the overall

18   payout to creditors." *Cox v. Cox (In re Cox)*, 247 B.R. 556, 565 n.13 (Bankr. D. Mass. 2000).

19       **E.**      **The Plan Is Not Feasible.**

20       The Debtor lists disposable income of $1,655.69.  However, the Debtor will be required to

21   pay at least $6,281.03 on account of Reliable's claim.  The Debtor does not have sufficient net

22   income to pay even one-half of that amount, which would also need to account for the Chapter 13

23   Trustee's fee.  Accordingly, the Debtor lacks sufficient monthly disposable income with which to

24   fund a chapter 13 plan.

25   _____

26   [2] As part of the contract, Builders Disbursements, Inc. ("BDI") would determine the amount of the
27   project that had been completed after making disbursements to the contractor and subcontractors.
     Pursuant to BDI's last report, the project was 68.18% complete.  Flores Decl. at ¶ 19.

28

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

1

## III.    <u>CONCLUSION</u>

2      Based on the foregoing, Reliable respectfully requests that (i) that the confirmation of the

3   Debtor's Chapter 13 Plan be denied and (ii) the Debtor's chapter 13 case be converted to chapter 7.

4      In the alternative, Reliable requests that the Plan be amended to (i) reflect the full amount

5   of Reliable's secured claim as well as the amounts owed on the unsecured portion of Reliable's

6   claim and (ii) that the present value, with an appropriate discount rate, of the total amount owed to

7   Reliable will be paid within a period not exceeding sixty (60) months.

8

9   DATED: June 23, 2015                    HUNT ORTMANN PALFFY
                                            NIEVES DARLING & MAH, INC.
10

11

12                                          By:      /s/ John L. Jones II
                                                  _____
13                                                     JOHN L. JONES II
                                            Attorneys for Reliable Design and Construction Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

**Declaration of Aaron J. Flores**

I, Aaron J. Flores, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California and in the United States District Court for the Central District of California.  I am the attorney of record for creditor Reliable Design and Construction Inc. ("Reliable" or "Creditor") in the non-bankruptcy action.  I submit this Declaration in support of Reliable's Objection to Confirmation of the Debtor's Chapter 13 Plan, which has been filed contemporaneously herewith.  I have personal knowledge of the facts and circumstances set forth below.  If called as a witness, I could and would competently testify thereto.

2.      The gravamen of the State Arbitration Action, which is the basis for Reliable's claim, is the Debtor's breach of contract to construct a single family residence.  Through the State Arbitration Action, Reliable seeks to recover for labor and materials that it contributed to the construction project.

3.      The project in question involved the construction of a new two-story single family home based upon plans that were prepared by an unlicensed architect.  On December 23, 2011, the Debtor and Reliable entered into a written agreement for the construction of a new two-story single family home with three bedrooms and three bathrooms.  The plans for the construction of the home were prepared by an unlicensed architect.  In the subsequent months, the Debtor began interfering with the project by, among other things, attempting to renegotiate subcontractor invoices, hiring additional subcontractors in violation of the agreement, demanding certain work be done for free, and refusing to pay invoices when due, among other things.

4.      On July 23, 2013, Reliable submitted its "Demand for Arbitration Before JAMS" to Hue Chau aka Jimmy Chau.  Thereafter, the matter was referred to JAMS, Inc. ("JAMS") for arbitration.[3]  A true and correct copy of the arbitration demand is attached hereto as **<u>Exhibit A</u>**.

---

[3] JAMS, Inc. was formerly known as Judicial Arbitration and Mediation Services.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

729464.1 JJ 3427.003

1

5.     On September 24, 2013, Reliable served its "Notice of Original Contractor's Intent to File 10-Day Stop Work Order".  Thereafter, on October 2, 2013, Reliable served notice of its 10-Day Stop Work Order.  True and correct copies of the foregoing documents are attached hereto as **Exhibit B**.

6.     When the Debtor failed to pay within the 10-day period, Reliable eventually stopped work on the construction project.

7.     The Debtor has a history of engaging in tactics to delay the eventual resolution of the State Court Action, including the following:

- Failing to pay the initial arbitration fees[4], which resulted in a 7 month delay.
- Canceling the first mediation at the last minute without rescheduling.
- Changing counsel 2 days before the March 2014 arbitration dates, resulting in a 4 month delay.

8.     Each of the above delays resulted in an increase in Reliable's attorney's fees and costs.  Initially, the arbitration hearings were set for December 4, 5 and 6, 2013.  After several continuances and mediation described above, the arbitration hearings were finally held on July 28 – August 1, 2014 and August 7, 2014.

9.     On January 23, 2014, my office recorded a mechanic's lien on behalf of Reliable on certain real property of the Debtor located at 14146 Benbow Street, Baldwin Park, CA 91706.

10.    On April 22, 2014, my office recorded a Notice of Extension of Time to Foreclose Lien (the "Extension Notice"), which extended the deadline for Reliable to foreclose on the mechanic's lien.  The Extension Notice was signed by the Debtor herein.

11.    On January 23, 2015, Reliable filed its Notice of Perfection of Mechanic's Lien Pursuant to 11 U.S.C. §§ 546(B) And 362(B)(3); Demand For Compliance With 11 U.S.C. § 363 with this Court ("Notice of Perfection").  [Docket No. 13].  A true and correct copy of the Notice of Perfection is attached hereto as **Exhibit C**.

---

[4] Reliable, however, did timely pay for its share of the fees.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

1    12.    True and correct copies of the mechanic's lien and Extension Notice are attached,

2    respectively, as exhibits A and B to the Notice of Perfection.

3    13.    On May 4, 2015, George D. Calkins, II, the arbitrator herein (the "Arbitrator"),

4    issued his Final Award (the "Final Award").  The Final Award set forth the following findings and

5    awards:

6    •    The Contract between Reliable and the Debtor was an integrated contract and was

7         fully negotiated;

8    •    The Debtor inappropriately obtained access to the construction payment records;

9    •    The Debtor breached the contract by refusing to pay Reliable for work that had

10        been performed (including change orders);

11   •    Reliable was the prevailing party for purposes of determining costs, interest, and

12        attorney's fees.

13   •    Reliable was awarded damages in the amount of $83,203.10 (consisting of an

14        award of $87,703.10 less $4,500 for lost rentals).

15   •    Reliable was awarded statutory interest in the amount of $10,805.51.

16   •    Reliable was awarded attorney's fees in the amount of $178,500.

17   •    Reliable was awarded expert fees and costs in the amount of $104,353.22

18        (consisting of an award of $25,000 for expert fees and $79,353.22 for costs).

19   14.    A true and correct copy of the Final Award is attached hereto as **Exhibit D**.

20   15.    On May 6, 2015, Reliable filed its Proof of Claim in this matter.  As of the petition

21   date, Reliable's claims against the Debtor consist of the following:

22   •    Damages in the amount of $83,203.10 (consisting of an award of $87,703.10 less

23        $4,500 for lost rentals).

24   •    Statutory interest in the amount of $10,805.51.

25   •    Attorney's fees in the amount of $178,500.

26   •    Expert fees and costs in the amount of $104,353.22 (consisting of an award of

27        $25,000 for expert fees and $79,353.22 for costs).

28

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

1    16.    A true and correct copy of Reliable's Proof of Claim is attached hereto as

2  **Exhibit E**.

3    17.    The debtor filed for bankruptcy on January 7, 2014, just five days before his

4  opposition to Reliable's motion for attorney's fees was due.

5    18.    The contract for the construction of the Benbow property, which is at the heart of

6  the State Arbitration Action, was for $508,000.  That project is now approximately 68% complete.

7    19.    As part of the contract, Builders Disbursements, Inc. ("BDI") would determine the

8  amount of the project that had been completed after it made disbursements.  Pursuant to BDI's last

9  report, dated June 24, 2013, the project was 68.18% complete.  A true and correct copy of the BDI

10  report is attached hereto as **Exhibit F**.

11    20.    Although slightly more than 30% of the project remains, it is reasonable to believe

12  that the property value will be substantially greater than $165,000.  A two-story three bedroom,

13  three bath house is significantly larger than any other home in the area.

14    I declare under penalty of perjury under the laws of the State of California that the

15  foregoing is true and correct.

16    Executed June 23, 2015, at Pasadena, California.

17

18                                                    _____
                                                              Aaron J. Flores
19

20

21

22

23

24

25

26

27

28

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

SUPPLEMENTAL OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

301 North Lake Avenue, 7th Floor, Pasadena, California  91101-1807

A true and correct copy of the foregoing document entitled (*specify*):   Supplemental Objection To Confirmation Of The
Debtor's Chapter 13 Plan

_____
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
06/23/2015____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  06/23/2015_____, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  06/23/2015_____, I
served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in
writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a
declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the
document is filed.

Hon. Sandra R. Klein
United Bankruptcy Court - Central District of California
255 East Temple Street, Suite 1582
Los Angeles 90012

⊠  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/23/2015 | Natalie Urbino | /s/ Natalie Urbino |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION:**

**By NEF**

CHAPTER 13 TRUSTEE: Kathy A. Dockery (TR) - efiling@CH13LA.com

OFFICE OF THE U.S. TRUSTEE:
United States Trustee (LA) - ustpregion16.1a.ecf@usdoj.gov

ATTORNEY FOR DEBTOR: M Wayne Tucker - tucker@waynetuckerlaw.com

ATTORNEY FOR JP MORGAN CHASE BANK: Merdaud Jafarnia - bknotice@mccarthyholthus.com

**By U.S. Mail**

ATTORNEY FOR DEBTOR:
M Wayne Tucker
Orrock Popka Fortino Tucker & Dolen
1533 Spruce St Ste 100
Riverside, CA 92507

OFFICE OF THE U.S. TRUSTEE:
United States Trustee (LA)
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

CHAPTER 13 TRUSTEE:
Kathy A. Dockery
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

**EXHIBIT A**



**THE RESOLUTION EXPERTS**®

# Demand for Arbitration Before JAMS

## Instructions for Submittal of Arbitration to JAMS

**Demand for Arbitration Based on Pre-Dispute Provision**

If you wish to proceed with an arbitration by executing and serving a Demand for Arbitration on the appropriate party, please submit the following items to JAMS:

    A.  Two (2) copies of the **Demand for Arbitration**

    B.  **Proof of service** of the Demand on the appropriate party
       E.g., copy of certified mail receipt signed by recipient or sworn statement of service by a non-party over 18 years of age.

    C.  **Two (2) copies of the entire contract containing the arbitration clause**

    D.  **Initial non-refundable $400 Case Management Fee (CMF) per party**
       Each party may submit its own CMF, or to expedite the commencement of the proceedings one party may elect to submit both or all CMFs.  In lengthier, more complex cases additional CMF may be billed.  For cases involving consumers, see JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses.

## OR

**Arbitration Based on Post-Dispute Fully Executed Arbitration Agreement, Oral Stipulation or Court Order Compelling Arbitration**

Whether or not a certain arbitrator has been designated, if the parties have agreed to arbitrate at JAMS or the court has ordered that the parties arbitrate at JAMS, kindly forward the following items:

    A.  Two (2) copies of the **Demand for Arbitration**

    B.  **Proof of service** of the Demand on the appropriate party
       E.g., copy of certified mail receipt signed by recipient or sworn statement of service by a non-party over 18 years of age.

    C.  Two (2) copies of **Executed Arbitration Agreement OR Court Order appointing arbitrator/JAMS**; Please contact JAMS to obtain the appropriate form (e.g., Arbitration Agreement)

    D.  Two (2) copies of the **entire contract, if any, containing an applicable arbitration clause**

    E.  **Initial non-refundable $400 Case Management Fee (CMF) per party**
       Each party may submit its own CMF, or to expedite the commencement of the proceedings one party may elect to submit both or all CMFs. In lengthier, more complex cases additional CMF may be billed. For cases involving consumers, see JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses.

## Please submit to your local JAMS Resolution Center.

Once the above items are received, JAMS will contact all parties to commence the arbitration process, including the appointment of an arbitrator and scheduling of a hearing date.

Updated 7/1/2013
Resolution Centers Worldwide • 1.800.352.5267 • www.jamsadr.com

(c) copyright 2013 JAMS.  All rights reserved.



**THE RESOLUTION EXPERTS®**

# Demand for Arbitration Before JAMS

**TO RESPONDENT:** Jimmy Chau

(Name of the Party on whom Demand for Arbitration is made)

Address: 14146 Benbow Street

City: Baldwin Park      State/Province: California      Zip: 91706

Telephone: 626-839-5633      Fax: 626-820-0156      Email:

Representative/Attorney (if known): Alvin B. Sherron

(Name of the Representative/Attorney of the Party on whom Demand for Arbitration is made)

Address: 1055 Wilshire Boulevard, Suite 1702

City: Los Angeles      State/Province: California      Zip: 90017

Telephone: 213-482-3283      Fax: 213-482-5453      Email: lawofcsabs@aol.com

**FROM CLAIMANT (name):** Reliable Design and Construction, Inc.

Address: 10904 Grand Avenue

City: Temple City      State/Province: California      Zip: 91780

Telephone: 626-350-5177      Fax: 626-350-5111      Email:

Representative/Attorney of Claimant (if known): Aaron J. Flores of Hunt Ortmann Palffy Nieves Darling & Mah, Inc.

(Name of the Representative/Attorney of the Party Demanding Arbitration)

Address: 301 North Lake Avenue, 7th Floor

City: Pasdena      State/Province: California      Zip: 91101

Telephone: 626-440-5200      Fax: 626-796-0107      Email: flores@huntortmann.com

**Nature of Dispute:** Claimant hereby demands that you submit the following dispute to final and binding arbitration (a more detailed statement of the claim(s) may be attached).

Dispute: See Exhibit 1, which is attached hereto and incorporated herein by reference.

Updated 7/1/2013
Resolution Centers Worldwide • 1.800.352.5267 • www.jamsadr.com
(c) copyright 2013 JAMS.  All rights reserved.



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

**Arbitration Agreement:** This demand is made pursuant to the arbitration agreement which the parties made as follows (cite location of arbitration provision and attach two (2) copies of entire agreement).

| Arbitration Provision Location: | Small Project Agreement, Article 6, Paragraph 1. |
|---|---|

**Claim & Relief Sought By Claimant:** Claimant asserts the following claim and seeks the following relief (including amount in controversy, if applicable).

Claim: Jimmy Chau materially breached the Small Project Agreement dated December 23, 2011 ("the Contract") with Reliable Design and Construction, Inc. ("Reliable Design") by failing to make timely payment to Reliable Design pursuant to the Contract terms. Reliable Design seeks an award of the principal sum ($46,159.35), delay damages (not less than $60,000), and attorney's fees and costs in an amount to be determined.

**Response:** Respondent may file a response and counter-claim to the above-stated claim according to the applicable arbitration rules. Send the original response and counter-claim to the claimant at the address stated above with two (2) copies to JAMS.

## Request for Hearing:

JAMS is requested to set this matter for hearing at: Los Angeles, California

(Preferred Hearing Location)

## Election For Expedited Procedures (Comprehensive Rule 16.1)

☑ By checking the box to the left, Claimant requests that the Expedited Procedures described in JAMS Comprehensive Rules 16.1 and 16.2 be applied in this matter. Respondent shall indicate not later than seven (7) days from the date this Demand is served whether it agrees to the Expedited Procedures.

Signed (Claimant):
(may be signed by an attorney)

Date: 7/23/13

Type / Print Name: Aaron J. Flores

**Please include a check payable to JAMS for the required initial, non-refundable $400 per party deposit to be applied toward your Case Management Fee and submit to your local JAMS Resolution Center.**



THE RESOLUTION EXPERTS®

# Demand for Arbitration Before JAMS

## COMPLETION OF THIS SECTION IS REQUIRED FOR CLAIMS INITIATED IN CALIFORNIA

**A. Please indicate if this** ☐ **IS or** ☒ **IS NOT a CONSUMER ARBITRATION as defined by California Rules of Court Ethics Standards for Neutral Arbitrators, Standard 2(d) and (e):**

"Consumer arbitration" means an arbitration conducted under a pre-dispute arbitration provision contained in a contract that meets the criteria listed in paragraphs (1) through (3) below. "Consumer arbitration" excludes arbitration proceedings conducted under or arising out of public or private sector labor-relations laws, regulations, charter provisions, ordinances, statutes, or agreements.

   1) The contract is with a consumer party, as defined in these standards;

   2) The contract was drafted by or on behalf of the non-consumer party; and

   3) The consumer party was required to accept the arbitration provision in the contract.

"Consumer party" is a party to an arbitration agreement who, in the context of that arbitration agreement, is any of the following:

   1) An individual who seeks or acquires, including by lease, any goods or services primarily for personal, family, or household purposes including, but not limited to, financial services, insurance, and other goods and services as defined in section 1761 of the Civil Code;

   2) An individual who is an enrollee, a subscriber, or insured in a health-care service plan within the meaning of section 1345 of the Health and Safety Code or health-care insurance plan within the meaning of section 106 of the Insurance Code;

   3) An individual with a medical malpractice claim that is subject to the arbitration agreement; or

   4) An employee or an applicant for employment in a dispute arising out of or relating to the employee's employment or the applicant's prospective employment that is subject to the arbitration agreement.

**If Respondent disagrees with the assertion of Claimant regarding whether this IS or IS NOT a CONSUMER ARBITRATION, Respondent should communicate this objection in writing to the JAMS Case Manager and Claimant within seven (7) calendar days of service of the Demand for Arbitration.**

**B. If this is an EMPLOYMENT matter, Claimant must complete the following information:**

Effective January 1, 2003, private arbitration companies are required to collect and publish certain information at least quarterly, and make it available to the public in a computer-searchable format. In employment cases, this includes the amount of the employee's annual wage. The employee's name will not appear in the database, but the employer's name will be published. Please check the applicable box below:

Annual Salary:  ☐ Less than $100,000    ☐ More than $250,000

                  ☐ $100,000 to $250,000  ☐ Decline to State

**C. In California, consumers (as defined above) with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of the arbitration fees.** In those cases, the respondent must pay 100% of the fees. Consumers must submit a declaration under oath stating the consumer's monthly income and the number of persons living in his or her household. Please contact JAMS at 1-800-352-5267 for further information.

# Exhibit 1

## I.    The Construction Contract

On or about December 23, 2011, Jimmy Chau and Reliable Design entered into a "Small Project Agreement", AIA Document A105, for the construction of a single-family home, located at 14146 Benbow Street, Baldwin Park, California ("the Contract"). In exchange for construction of the home, Mr. Chau agreed to pay Reliable Design a lump sum of $508,800 ("the Contract work"). The Contract sum was subject to additions and deductions by change order, as well as certain exclusions.

Subsequent to the execution of the Contract, Change Order number 2, in the amount of $15,000, was executed by your client, Mr. Chau. Reliable Design received that $15,000 payment. However, Mr. Chau further expanded the original Contract's scope of work, which required additional Change Orders totaling $46,159.35. Those Change Order numbers are: 1, 3, 4, 6, 7, 8, 9, 12, 13, and 14. Reliable Design has completed those Change Orders but has to date not been paid.

In addition to the aforementioned Change Orders, three (3) Change Orders were produced by Reliable Design in order to accommodate the scope of work expansion and redesign work which Mr. Chau has undertaken. These Change Order numbers are: 10, 11, and 15; which total $31,702. Reliable Design has not commenced work pursuant to Change Order numbers 10, 11, and 15. It should be noted, however, these change orders are necessary in order to complete the project per the redesign work which Mr. Chau has undertaken.

## II.    Construction Delays

During the course of construction, Mr. Chau undertook several construction changes which deviated from the original plans and specifications. On two separate occasions the construction changes required a resubmittal of building plans.

First, in and around February 2012, a revised set of building plans were submitted to the City of Baldwin Park building department. Those plans were approved on or about March 22, 2012. Principally, the revised plans incorporated changes requested by Mr. Chau relating to changed elevations, floor plans and electrical work. A total of seven (7) pages of revised plans were submitted at Mr. Chau's request.

Second, in and around late April 2013, a second set of revised building plans were also submitted to the City of Baldwin Park building department. The second set of revised building plans were approved on or about May 22, 2013. This second set of revised plans incorporated major changes to the construction elevations.

In addition to the two building plan revisions, Mr. Chau has also made other changes to the plans and specifications for which revised plan submittals are not necessary. Those changes include, among other things, extra finish carpentry work. While revised plan submittals were not

necessary for the revised finish carpentry work, such revisions caused delay to Reliable Design's work schedule and there is documentation to prove it.

Notwithstanding the design changes undertaken by Mr. Chau, he has also circumvented the Contract by contracting directly with Reliable Design's subcontractors. By doing this, Mr. Chau has made it impossible for Reliable Design to ensure that the project remains on schedule for completion pursuant to the Contract terms.

In total, the numerous redesigns and extra work which Mr. Chau has undertaken ultimately caused over six (6) months of delay to the project's completion. These delays have caused Reliable Design to incur significant overhead costs, which are currently estimated at not less than $60,000.

III.    Current Outstanding Balance

Given the aforementioned facts, the following is a current accounting of the Contract, which includes outstanding change orders, future change orders necessary for the completion of the home, remaining contract work, and construction delays.

| | |
|---|---|
| Base Contract Amount | $508,800 |
| Change Order #2 | $15,000 |
| Change Orders Performed at Owner's Request | $46,159.35 |
| Change Orders Required But Not Yet Performed | $31,702 |
| **Updated Contract Amount to Date:** | **$601,661.35** |
| Change Orders Not Yet Performed | ($31,702) |
| Amount Paid to Date | ($357,138.29) |
| Remaining Contract Work Not Yet Performed | ($166,661.71) |
| **Outstanding Contract Balance:** | **$46,159.35** |
| Construction Delays | $60,000 |
| **TOTAL AMOUNT DUE:** | **$106,159.35** |

# SMALL PROJECT AGREEMENT

*A/A Document A105*

**THIS AGREEMENT** is made:  **On  December 23, 2011**

BETWEEN the Owner:

Mr. Jimmy Chau
14146 Benbow St., Baldwin Park, Ca 91706
TEL: 626-839-5633 (O)
E-Fax: 626-820-0156
CELL: 626-675-7088 (Jimmy)

and the Contractor:

RELIABLE DESIGN AND CONSTRUCTION, INC.
10904 Grand Ave., Temple City, Ca 91780
TEL: 626-350-5177 (O)
FAX: 626-350-5111 (O)
CELL: 626-905-5345 (John)

for the following Construction Project:

Build A  New Two-Story  Single House
And A Garage Based On Bidding Plans
Dated On Feb. 14, 2011

The Architect is:

USCA COMPANY
322 E. Forest Ave., Arcadia, Ca 91006
Tel: 626-359-3568
Fax: 626-389-6264

The Owner and Contractor agree as follows:

H.C



AIA Document A105 - OWNER-CONTRACTOR AGREEMENT-SMALL PROJECTS

# SMALL PROJECT AGREEMENT

*A/A Document A105*

## ARTICLE 1

### THE CONTRACT

1. This Agreement signed by the Owner and Contractor.

2. AIA Document A205, General Conditions of the Contract for Construction of a Small Project.

3. the Drawings and Specifications prepared by the Architect, dated and enumerated as follows:

Drawings:      **Based On Bid Sets**

**Including: A-1, A-2, A-3,A-4, A-5, A-6, A-7  ⸻⸻⸻⸻⸻Dated: 02/14/2011**

**S-1, S-2, S-3, S-4, S-5 ⸻⸻⸻⸻⸻⸻Dated: No Date**

**Sheet 1: CF-1R & MF-1R, Sheet 2: CF-1R & MF-1R — Dated:11/05/2010**

**C-1, C-2 (Grading Plans) ⸻⸻⸻⸻⸻Dated:01/07/2011**

**Construction Cost Breakdown Is Based On The Bid Set Plans Listed Above.**

Specifications:      **A SCOPE OF WORK:** The General Contractor shall furnish all the materials and perform all of the work shown on the drawings and/or described in the specifications listed above, as annexed hereto as it pertains to work to be performed at **14146 Benbow St., Baldwin Park, Ca 91706**

4. addenda prepared by the Architect as follows:

5. Written change orders ...

6. other documents, if any, identified as follows:

SEE ATTACHMENT

*H. C*

AIA Document A105 – OWNER-CONTRACTOR AGREEMENT-SMALL PROJECTS

# SMALL PROJECT AGREEMENT

*A/A Document A105*

## ARTICLE 2

### DATE OF COMMENCEMMENT AND SUBSTANTIAL COMPLETION DATE

The date of commencement shall be counted on the day which the day of building break ground for foundation work. The general contractor shall substantially complete the work about 360 working days but not later than 450 WORKING DAYS CONSTRUCTION TIME FROM THE DAY OF "BREAK GROUND FOR FOUNDATION", if any storm, raining or nature disaster will delay this construction time are not counted in the working days.

**CONSTRUCTION TERMINATION DATE AND PENALTY CLAUSE:**

1. The construction ended date is the date when final inspection approved and signed by the City's inspector.

2. When the house construction close to finish; the general contractor will e mail owner to notify his tenant (4621 Baldwin Park Blvd., Baldwin Park, Ca.) who is adjacent to the job site to move out two months ahead. So, the contractor can continue the demolition work to get the final inspection approved by the City. Any delays caused by owner's side will be owner's responsibilities.

3. The general contractor, Reliable Design And Construction, Inc., will compensate owner $2,500 per month or $83 dollars per calendar day if the construction is ended after 450 working days, plus change order extension days, plus the days which construction delays caused by the owner's side, plus any delays caused by nature disasters and weather.

## ARTICLE 3

### CONTRACT SUM

3.1 Subject to additions and deductions by change order, the Contract Sum is:  **$508,800.00**

FIVE HUNDRED AND EIGHT THOUSAND AND EIGHT HUNDRD DOLLARS ONLY.

BASED ON FIVE PAGE  ATTACHMENTS OF CONSTRUCTION COST  BREAKDOWN

3.2 For purposes of payment, the Contract Sum includes the following values related to portions of the Work.

*** SEE ATTACHED CONSTRUCTION COST BREAKDOWN SHEETS— Total 5 Pages.

3.3 The Contract Sum shall include all items and services necessary for the proper execution and completion of the Work.

*H. C*

**ARTICLE 4**



AIA Document A105 - OWNER-CONTRACTOR AGREEMENT-SMALL PROJECTS

# SMALL PROJECT AGREEMENT

*A/A Document A105*

**PAYMENT**

4.1 Based on Contractor's Applications for Payment certified by the Owner. The Owner shall pay the Contractor as follows:

1. **Based on BDI's regulations and requirements.**

2. **Based on Reliable Design And Construction, Inc. Construction Cost Breakdown list;**
   **Item by item to pay sub contractors.**

3. **If any items have any budgets left; then that budgets need to transfer to the item called "Builder's overhead and profit". If any item don't have sufficient budget; then the first transfer will be from the fund of "Contingencies" item. After that will be from the fund of "Builder's overhead and profit" item.**

4. **RDCI agrees to have 5% retention on overall to be release upon expiration of lien period based on BDI's requirement.**

4.2 Payment due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of **10% ANNUAL RATE.**

## ARTICLE 5

### INSURANCE

**5.1> WORKERS' COMPENSATION INSURANCE ——————— $1,000,000.00 (ONE MILLION DOLLARS)**

**5.2> The general contractor promises that they will purchase at least one million liability insurance right away after this construction contract signed.**



H.C

J.M

# SMALL PROJECT AGREEMENT

*A/A Document A105*

## ARTICLE 6

### ARBITRATION AND ATTORNEY'S FEE

1.> In the event the parties to this agreement are unable to reach a settlement of any disputes arising out the services under this agreement, such disputes shall be settled by binding arbitration by an arbitrator to be mutually agreed upon by the parties. If the Parties cannot agree on a single Arbitrator, and then the Arbitrator(s) shall be selected in accordingly.

2.> In the event of any arbitration arising related to the services provided under this agreement, the prevailing party will be entitled to recovery of all reasonable costs incurred, including staff time, court costs, attorney's fees and other related expenses.

## ARTICLE 7

### OTHER TERMS AND CONDITIONS

SEE ATTACHMENTS : Construction Cost Breakdown – On Site —— Total 5 Pages

This Agreement entered into as of the day and year first written above.

THIS AGREEMENT ENTERED ON **DECEMBER 23, 2011**

OWNER:      **MR. JIMMY CHAU**  /Owner                       **JOHN LI MA**  /Gen. Contractor

signature                                                    signature

CONSTRUCTION ADDRESS                              RELIABLE DESIGN & CONSTRUCTION, INC.

14146 BENBOW STREET                              10904 GRAND AVENUE

BALDWIN PARK, CA 91706                           TEMPLE CITY, CA 91780

**NOTE: UPON THIS AGREEMENT BEING SIGNED BY ALL PARTIES; THIS AGREEMENT SUPERCEDES THE BUILDER AGREEMENT BETWEEN THE PARTIES CONCERNING THIS PROJECT.**

*H.C*

AIA Document A105 – OWNER-CONTRACTOR AGREEMENT-SMALL PROJECTS

12/23/2011

TO: Owner: Mr. Jimmy Chau
CONSTRUCTION PROJECT: 14146 Benbow St., Baldwin Park, CA 91706: A New Single Family Residence
FROM: General Contractor: Reliable Design And Construction, Inc.
RE: Construction Project: A Single Family Residence -- Total Construction Livable Area: 3,633 S. F., Total Garage: 977 S. F.
At 14146 Benbow St., Baldwin Park, CA 91706

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **A.>SECTION 1-GENERAL REQUIREMENT** | | | | | | | |
| 1.)Building Permit | 101 | $300 | Reliable will be responsible for two complete sets of blueprints only. | | | | |
| 2.)Engineer & Survey | 102 | By Owner | | | | | |
| 3.)Test & Inspection | 103 | By Owner | | | | | |
| 4.)Permanent Water Meter | 104 | N.I. | Not Included Typical | | | | |
| 5.)Temporary Facilities | 105 | $3,600 | | | | | |
| 6.)Permanent Electrical Meter | 106 | N.I. | Not Included Typical | | | | |
| 7.)Power Charge | 107 | By Owner | Reliable will pay for the difference of the bills | | | | |
| 8.)Water Charge | 108 | By Owner | Reliable will pay for the difference of the bills | | | | |
| 9.)Asbestos Report / Remove | 109 | By Owner | | | | | |
| 10.)Clean Up | 110 | $2,800 | | | | | |
| 11.)Causal Labor | 111 | $700 | | | | | |
| 12.)Supervision | 112 | $22,000 | | | | | |
| | 113 | | | | | | |
| | 114 | | | | | | |
| | 115 | | | | | | |
| **Sub Total $** | | $29,400 | | | | | |
| **B.>SECTION 2-SITE WORK** | | | | | | | |
| 1.)Demolition | 201 | $15,000 | | | | | |
| 2.)Rough Grading / Compaction | 202 | $5,000 | | | | | |
| 3.)Concrete Paving | 203 | $9,500 | | | | | |
| 4.)Public Concrete Work | 204 | N.I. | Not Included Typical | | | | |
| 5.) Fence & Block Wall (Benbow St.) | 205 | $5,000 | | | | | |
| 6.)Water Barrier(Sand Bag) | 206 | | | | | | |
| **Sub Total $** | | $34,500 | | | | | |
| **C.>SECTION 3- CONRETE IN HOUSE** | | | | | | | |
| 1.)Finish Grading | 301 | $2,000 | | | | | |
| 2.)Conc. Foundation & Slab | 302 | $25,000 | | | | | |
| **Sub Total $** | | $27,000 | | | | | |
| **D.>SECTION 4-METAL** | | | | | | | |
| 1.)Structure Steel | 401 | N.I. | Not Included Typical. | | | | |
| | 402 | | | | | | |
| **Sub Total $** | | $0 | | | | | |

111

H. C

Page1



321Arbol\Progrs17.frm

**EXHIBIT B**

### 10-DAY STOP WORK ORDER (*Civil Code §8830 et al.*)

**Owner:**                Mr. Jimmy Chau, 14146 Benbow Street, Baldwin Park, California

**Direct Contractor:**    Reliable Design and Construction, Inc., 10904 Grand Ave.,
                          Temple City, California 91780

**Project:**              14146 Benbow Street, Baldwin Park, California

**Fund Control Service:** Builders Disbursements, Inc., 7447 N. Figueroa Street, Suite 305,
                          Los Angeles, California 90041

Pursuant to California *Civil Code* §8830 *et al.*, notice is hereby given by the above-referenced Direct Contractor that unless all amounts due the Direct Contractor are paid within 10 days from the date this notice is served, the Direct Contractor will stop work on the above-referenced Project. Within five (5) days of receipt of this notice, the Owner is required to forward to any construction lender a copy of this notice, if any.

This notice is given in connection with the following payment which is past due:

| Payment Amount | Due Date | Description of Work |
|---|---|---|
| $106,159.35 | July 22, 2013 | Construction of single family residence. |

DATED: *October 2, 2013*        By _____
                                AARON J. FLØRES, Attorney for
                                Reliable Design and Construction, Inc.*

*The individual providing this notice is the attorney for Reliable Design and Construction, Inc. and may be reached at: Hunt Ortmann Palffy Nieves Darling & Mah, Inc., 301 North Lake Avenue, 7th Floor, Pasadena, California 91101; (626) 440-5200.

## NOTICE OF ORIGINAL CONTRACTOR'S INTENT TO FILE

### 10-DAY STOP WORK ORDER (*Civil Code §8830 et al.*)

**NOTICE IS HEREBY GIVEN** that Reliable Design and Construction, Inc. ("Original Contractor") intends to file a 10-day Stop Work Order pursuant to *Civil Code §8830 et al.*  The statutory 10-day Stop Work Order will state that unless all amounts due the Original Contractor are paid within 10 days from the date the written notice is provided, the Original Contractor will stop work on the Project.

This notice is given in connection with the December 23, 2011 Small Project Agreement between Jimmy Chau and Reliable Design and Construction, Inc. for the construction of a single family residence located at 14146 Benbow Street, Baldwin Park, California.

RELIABLE DESIGN AND
CONSTRUCTION, INC.

DATED: *Sep. 24, 2013*

By _____
JOHN MA, President

565115.1 AJF 3427.003

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 301 North Lake Avenue, 7th Floor, Pasadena, CA 91101-1807.

On October 3, 2013, I served the following document(s) described as **10-DAY STOP WORK ORDER; NOTICE OF ORIGINAL CONTRACTOR'S INTENT TO FILE 10-DAY STOP WORK ORDER** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

**BY CERTIFIED/RETURN RECEIPT REQUESTED MAIL:** I am "readily familiar" with Hunt Ortmann Palffy Nieves Darling & Mah, Inc.'s practice for collecting and processing correspondence for mailing via certified/return receipt requested mail with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Pasadena, California, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 3, 2013, at Pasadena, California.

_____
Nancy Darling

565510.1 AJF 3427.003

## SERVICE LIST
### Reliable Design and Construction, Inc. v. Jimmy Chau
### JAMS Arbitration Case No. 1220046673

Jimmy Chau
14146 Benbow Street
Baldwin Park, CA  91706

Respondent

Alvin B. Sherron, Esq.
Law Offices of Alvin B. Sherron
1055 Wilshire Boulevard, Suite 1702
Los Angeles, CA  90017

Attorney for Respondent

G R Martinez, Inc.
P. O. Box 929
Baldwin Park, CA  91706

626-484-0033

M-2 Building Materials
2527 Lee Ave.
South El Monte, CA 91733

626-455-0594

Howard & Sons Building Material, Inc.
2340 Mills St.
Pomona, CA  91766

J S Glass Corp.
12211 Garvey Ave.
El Monte, CA  91732

626-443-2688

Pacific Sales
24120 Gamer St.
Torrance, CA  90505

B Wholesale Roofing Supplies
1095 S. Fair Oaks
Pasadena, CA  91105

CDW Corp.
2700 N. Main St. #550
Santa Ana, CA  92705

714-202-8669

CZAR Audio & Video
419 W. Maple Ave.
Monrovia, CA  91016

626-471-3543

Mayorga Roofing
1382 Ballerina Place
Pomona, CA  91766

626-796-4652

Memo's Scaffolding Norwalk, Inc.
12722 Carmenita Rd.
Santa Fe Springs, CA  90670

562-404-8600

Jorge Ramos
508 Sandyhook Ave.
La Puente, CA  91744

W H Pang Design & Finish, Inc.
9900 Lower Azusa Rd.
El Monte, CA  91731

Juan Saldivar Gardening Services
15727 Loukelton St.
La Puente, CA  91744

Fireplace Guys, Inc.
P. O. Box 6980
Torrance, CA  90504

310-320-2785

Alegre Custom Cabinets
2437 Tyler Ave.
El Monte, CA  91778

Wei-Pi Construction Corp.
2123 Potrero Ave.
South El Monte, CA  91733

626-575-8740

626-350-2338

Louis Doors Inc.
18800 Amar Rd., #C-8
Walnut, CA  91789

O J Insulation L.P.
600 S. Vincent Ave.
Azusa, CA  91072

909-594-4402

626-812-6070

C9 Drywall Corp.
9835 Alpaca St.
South El Monte, CA  91733

Cell-Crete Corp.
135 E. Railroad
Monrovia, CA  91016-4652

626-962-1200

Hong Tang Construction
14525 Los Robles Ave.
Hacienda Heights, CA  91745

E Plastering
6126 Marbisa Ave., Apt. #A
Huntington Park, CA  90201

323-392-5143

Reliable Design and Construction, Inc.
10904 Grand Ave.
Temple City, California 91780

Builders Disbursements, Inc.
7447 N. Figueroa Street, Suite 305
Los Angeles, California 90041

**EXHIBIT C**

Richard Mah, Esq., SBN 149148
Aaron J. Flores, Esq., SBN 268279
John L. Jones II, Esq., SBN 225411
HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 North Lake Avenue, 7th Floor
Pasadena, California 91101-1807
Phone: (626) 440-5200    Fax: (626) 796-0107

Attorneys for Reliable Design and Construction
Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:15-BK-10239-SK |
| HUE CHAU AKA JIMMY CHAU, | Chapter 13 |
| Debtor. | **NOTICE OF PERFECTION OF MECHANIC'S LIEN PURSUANT TO 11 U.S.C. §§ 546(b) AND 362(b)(3); DEMAND FOR COMPLIANCE WITH 11 U.S.C. § 363** |
| | [No Hearing Required] |

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

683185.1 JJ 3427.003

1

TO THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, THE DEBTOR, ALL PARTIES IN INTEREST AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that pursuant to 11 U.S.C. §546(b), Reliable Design and Construction Inc. ("Reliable"), a creditor of the Debtor herein, hereby perfects its mechanic's lien on real property owned by the Debtor located at 14146 Benbow Street, Baldwin Park, CA 91706 and/or which is described as follows: Assessor's Parcel No.: 8543-012-022; Tract No. 16441; Lots 12 and 13 (the "Property").  The mechanic's lien was recorded in the County of Los Angeles Recorder's Office as Document No. 20140078901.  The mechanic's lien is in the amount of $157,703.10 for labor and materials on the construction of a single family residence at the Property.  A true and correct copy of the mechanic's lien is attached hereto as Exhibit "A".  A true and correct copy of the Notice of Extension of Time to Foreclose Lien (the "Extension Notice"), which extended the deadline for Reliable to foreclose on the mechanic's lien, is attached hereto as Exhibit "B".  The Extension Notice was recorded in the County of Los Angeles Recorder's Office as Document No. 20140411760.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to 11 U.S.C. §546(b), Reliable hereby provides notice to the Debtor, as the purported owner of the Property mentioned in the mechanic's lien, that notwithstanding the automatic stay of 11 U.S.C. §362, Reliable hereby perfects its claim to foreclose its mechanic's lien, as may be required by Section 3144(b) of the California Civil Code.  Accordingly, in light of this notice, the Debtor and other parties-in-interest are hereby estopped from claiming that any lawsuit to foreclose Reliable's mechanic's lien was not timely commenced pursuant to Section 3144(b) of the California Civil Code.

**PLEASE TAKE FURTHER NOTICE** that, additionally, the Debtor is hereby notified of Reliable's perfection of its interest in the Property pursuant to 11 U.S.C. §546(b) and 362(b)(3) and in lieu of seizure of any property or commencement of an action to whatever extent such seizure or commencement may be necessary in order to accomplish a perfection of Reliable's interest in any property.  This notice does not constitute, and this record of notice does not constitute, an admission as to the necessity of any such seizure or commencement.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

683185.1 JJ 3427.003

2

NOTICE OF PERFECTION OF MECHANIC'S LIEN PURSUANT TO
11 U.S.C. §§ 546(b) AND 362(b)(3); DEMAND FOR COMPLIANCE WITH 11 U.S.C. § 363

PLEASE TAKE FURTHER NOTICE that Reliable claims all rents, issues, profits or other monies are generated by the underlying real property, including, without limitation, refunds of deposits with governmental agencies or monies received as a result of a condemnation proceeding, and proceeds thereof, to be  the cash collateral of Reliable and may not be used by the Debtor for any purpose without the consent of Reliable.  Reliable also hereby makes demand for full compliance by the Debtor with the requirements of 11 U.S.C. §363 regarding the segregation, accounting and prohibition of use of all of Reliable's cash collateral.

DATED: January 23, 2015                    HUNT ORTMANN PALFFY
                                           NIEVES DARLING & MAH, INC.


                                           By:    /s/ John L. Jones II
                                                  JOHN L. JONES II
                                           Attorneys for Reliable Design and Construction Inc.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7ᵀᴴ FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

Case 2:15-bk-10239-SK    Doc 33    Filed 06/23/15    Entered 06/23/15 18:40:46    Desc
Main Document    Page 4 of 13

**EXHIBIT A**

COPY



RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Aaron J. Flores, Esq.
Hunt Ortmann Palffy Nieves
Darling & Mah, Inc.
301 N. Lake Avenue, 7th Floor
Pasadena, CA 91101

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## MECHANIC'S LIEN

Reliable Design and Construction, Inc. ("Reliable Design"), located at 10904 Grand Avenue, Temple City, California 91780, hereby claims a mechanic's lien in the amount of $157,703.10 on the construction of a single family residence and on the real property on which it is located at 14146 Benbow Street, Baldwin Park, CA 91706 and/or which is described as follows: Parcel: 8543-012-022; Tract No. 16441; Lots 12 and 13. The lien claimant reserves the right to amend this lien when more information is provided. The Owner of the real property is Jimmy Chau. Reliable Design furnished labor, services, materials and equipment to the real property owner, Jimmy Chau. Said labor, services, materials and equipment includes the construction of a new single family residence.

Dated: January 22, 2014          Name of Claimant:   RELIABLE DESIGN AND
                                                     CONSTRUCTION, INC.

*Jimmy Chau*
*14146 Benbow Street*
*Baldwin Park, CA. 91706*          By:   Aaron J. Flores

                                   Its:   Attorney in Fact

## VERIFICATION

I am the agent authorized to make this verification on behalf of Reliable Design and Construction. This mechanic's lien is true of my own knowledge, except for those matters stated on my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 22, 2014

          Aaron J. Flores, Attorney in Fact

**Notice of Mechanic's Lien and Proof of Service Affidavit Follow on Next Page**

602351.1 AJF 3427.003

## NOTICE OF MECHANIC'S LIEN

### ATTENTION!

**Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanic's lien is recorded.**

**The party identified in the mechanic's lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanic's lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanic's lien is released.**

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.**

### PROOF OF SERVICE AFFIDAVIT

I, Shirley K. Stickley, served this Mechanic's Lien and Notice of Mechanic's Lien on Respondent Jimmy Chau. Service was made on January 22, 2014, by certified mail, return receipt requested, postage prepaid, addressed to Jimmy Chau, located at 100 South Mockingbird Lane, West Covina, CA 91791.

I certify or declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2014, at Pasadena, California.

_____
Shirley K. Stickley

602351.1 AJF 3427.003

**EXHIBIT B**



**RECORDING REQUESTED BY:**

Richard Mah, Esq.

**WHEN RECORDED MAIL TO:**

Richard Mah, Esq.
Hunt Ortmann Palffy Nieves Darling
    & Mah, Inc.
301 North Lake Avenue
Seventh Floor
Pasadena, California 91101-1807



COPY
Has not been compared with original.
Original will be returned when
processing has been completed.
LOS ANGELES COUNTY REGISTRAR - RECORDER

04/22/2014

*20140411760*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# NOTICE OF EXTENSION OF TIME TO FORECLOSE LIEN

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Richard Mah, Esq.
Hunt Ortmann Palffy Nieves Lubka
Darling & Mah, Inc.
301 North Lake Avenue, 7th Floor
Pasadena, California  91101-1807

                                        SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF EXTENSION OF TIME TO FORECLOSE LIEN

WHEREAS, Reliable Design and Construction, Inc. did on the 23rd day of January 2014 of
record a Mechanic's Lien in the Office of the County Recorder of Los Angeles County, State of
California as Document No. 20140078901 against certain real property located in the County of
Los Angeles, State of California, 14146 Benbow Street, Baldwin Park, CA 91706 and/or which
is described as follows: Parcel: 8543-012-022; Tract No. 16441; Lots 12 and 13, for the sum of
$157,703.10; and WHEREAS, the last day to file suit to foreclose on the lien is April 23, 2014.

NOW, THEREFORE, it is agreed by and between the said Owner, Jimmy Chau, whose name is
signed hereto, and the said Claimant that the deadline to file suit to foreclose on the lien is hereby
tolled until through and including April 23, 2015, and said Owner waives any and all right to object
to the maintenance of any action brought to foreclose said lien which may hereafter be brought
within the period hereinabove mentioned and waives any right to object to the maintenance of such
suit to foreclose on the ground that it is barred by any statute of limitations whatsoever, provided that
suit to foreclose is brought within the time provided in this agreement.  Notwithstanding the
foregoing, nothing in this Notice of Extension of Time to Foreclose Lien shall be construed as an
agreement that any amount is due the Claimant on said lien, and the Owner reserves all other
defenses that the Owner could have asserted regarding the mechanic's lien.

IN WITNESS WHEREOF, Jimmy Chau and Reliable Design and Construction, Inc. execute this
agreement in the manner required by law.

Claimant:  Reliable Design and Construction,        Owner:  Jimmy Chau
Inc.

By: _John L. Ma_____              By: _____

Name: _John Li Ma_____              Name: _Jimmy Chau_____

Title: _President_____              Title: _Owner_____

Date: _04/22/2014_____              Date: _04/22/2014_____

BRUCE V. Sh
Commission # 
Notary Public - 
Los Angeles 
My Comm. Expires

STATE OF CALIFORNIA                      )
                                         )
COUNTY OF LOS ANGELES                    )

On _April 22, 2014_____, before me, _Michelle Perez-Consuegra_, a Notary Public,
personally appeared ___John Li Ma_____, who proved to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument, and
acknowledged to me that he executed the same in his authorized capacity, and that by his
signature on the instrument the person, or the entity upon behalf of which the person acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____
Notary Public

MICHELLE PEREZ-CONSUEGRA
Commission # 1937746
Notary Public - California
Los Angeles County
My Comm. Expires May 22, 2015

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _Los Angeles_

On _4/22/14_ before me, _Bruce V Sharp Notary Public_ ,
<span style="font-size:small">(Here insert name and title of the officer)</span>

personally appeared _Jimmy Chan_ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

(Notary Seal)

> **BRUCE V. SHARP**
> Commission # 2013040
> Notary Public - California
> Los Angeles County
> My Comm. Expires Mar 17, 2017

◆━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━◆

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual (s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

_Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required._

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

301 North Lake Avenue, 7th Floor, Pasadena, California  91101-1807

A true and correct copy of the foregoing document entitled (*specify*):  _Notice of Perfection of Mechanic's Lien Pursuant to_
_11 U.S.C. §§ 546(b) and 362(b)(3); Demand for Compliance with 11 U.S.C. § 363_

_____
_____
_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 _01/23/2015_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _01/23/2015_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _01/23/2015_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein
United Bankruptcy Court - Central District of California
255 East Temple Street, Suite 1582
Los Angeles 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _01/23/2015_ | _Vanessa Hobdy_ | _/s/ Vanessa Hobdy_ |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

## ADDITIONAL SERVICE INFORMATION:

### By NEF

CHAPTER 13 TRUSTEE: Kathy A. Dockery (TR) - efiling@CH13LA.com

OFFICE OF THE U.S. TRUSTEE:
United States Trustee (LA) - ustpregion16.1a.ecf@usdoj.gov

ATTORNEY FOR DEBTOR: M Wayne Tucker - tucker@waynetuckerlaw.com

ATTORNEY FOR JP MORGAN CHASE BANK: Merdaud Jafarnia - bknotice@mccarthyholthus.com

### By U.S. Mail

ATTORNEY FOR DEBTOR:
M Wayne Tucker
Orrock Popka Fortino Tucker & Dolen
1533 Spruce St Ste 100
Riverside, CA 92507

OFFICE OF THE U.S. TRUSTEE:
United States Trustee (LA)
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

CHAPTER 13 TRUSTEE:
Kathy A. Dockery
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017

--
Chase
P.O. Box 15298
Wilmington, DE 19850

Chase Mtg
P.O. Box 24696
Columbus, OH 43224

Fifth Third Bank
Bankruptcy Department
1830 E. Paris Ave. Se
Grand Rapids, MI 49546

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE

**EXHIBIT D**

George D. Calkins, II, Esq.
JAMS
1601 Cloverfield Blvd., Suite 370-S
Santa Monica, CA  90404
T: 310-309-392-3044
F: 310-396-7576

Arbitrator

**IN THE ARBITRATION OF**

| | |
|---|---|
| RELIABLE DESIGN & CONSTRUCTION, INC., a California corporation, | ) JAMS Ref. No.: 1220046673 |
| Claimant, | ) **FINAL AWARD** |
| v. | ) |
| | ) Arbitration Dates: |
| JIMMY CHAU, an individual, | ) July 28 - August 1, 2014 and |
| Respondent. | ) August 7, 2014 |
| | ) |
| JIMMY CHAU, an individual, | ) |
| Cross-Complainant, | ) |
| v. | ) |
| RELIABLE DESIGN & CONSTRUCTION, INC., a California corporation, | ) |
| Cross-Respondent. | ) |

## <u>INTRODUCTION</u>

We conducted the Arbitration concerning this single family home construction project last summer.  The Arbitration was preceded by a long procedural process involving a number of continuances and a mediation.

1      <u>History</u>

2          I served as <u>both</u> mediator and Arbitrator, pursuant to a stipulation of the parties.

3          Counsel for both the Claimant Reliable Design & Construction, Inc. ("Claimant"), and

4   Respondent Jimmy Chau ("Respondent"), the contractor and owner, respectively, served their

5   clients well in a case, which was not very well administered by the owner and contractor during the

6   underlying construction Project.

7          It was a troubled Project from day one.  The execution of the Project was <u>not</u> a model of

8   Contract administration by the contractor.  Similarly, the Respondent engaged in numerous

9   practices that were ill advised and counter-productive (under the advice of his brother, who should

10  have known better.)  This included the Respondent obtaining an incomplete and ineffective set

11  design documents, and engaging in numerous changes to the design.

12         Also, the owner Respondent undertook to interfere with the construction process by

13  working directly with many subcontractors and by insisting on renegotiating virtually every

14  financial aspect of the Project, after closely negotiating the fixed Contract price that the parties

15  agreed upon in their underlying Contract negotiations.  The consequence was that the parties ended

16  up with a broken Project and inevitable legal dispute.

17         The Arbitrator has carefully considered the evidence, and the briefing presented by the

18  parties.  Furthermore, the Arbitrator reaches the decision herein relying (as he must) on his

19  perception of the credibility of the positions of the parties, both as articulated in their testimony,

20  and as demonstrated by the questionable "quality" of the evidence presented by the parties at the

21  Arbitration.

22     <u>Troubled Project</u>

23         Try, as able counsel might for both sides, they really could not salvage what was a trouble

24  plagued residential construction project, that was frankly doomed to fail from the beginning, nor

25  could counsel make sense of that Project during this overly prolonged legal dispute.  The Arbitrator

26  makes herein a partial award in favor of the Claimant, but does not award the Claimant everything

27  he asks for.

28

1      Furthermore, the Arbitrator does not find merit in the majority of the assertions by the

2  homeowner Respondent.  This case was also burdened by the, on again off again, construction

3  defect claims pursued by the Respondent.  In the end, the Respondent abandoned his construction

4  defect claims.

5      The sequence of events leading to assertion, withdrawal, reassertion and once again

6  withdrawal of the construction defect claims by the Respondent, characterizes the unfortunate

7  nature of this dispute as it proceeded forward from the perspective of the Respondent.

8      The Arbitrator was not impressed by much of the evidence presented by <u>both</u> <u>sides</u> during

9  the Arbitration, especially the Respondent.  Had this case been presented at jury trial, much of the

10  evidence advanced by the parties would not have passed the scrutiny of a trial judge serving in a

11  jury trial.  This is the case as to the construction expert presented by Respondent.

12  <u>Delay Cases Were Weak</u>

13      Both sides asserted delay claims and the Arbitrator concludes, after much thought and

14  scrutiny that neither side presented credible evidence of a delay or disruption case.  While the

15  Claimant contractor presented testimony by a heretofore credible construction expert, none of the

16  nuts and bolts of a credible delay or disruption claim were presented by the Claimant in the

17  judgment of the Arbitrator, nor did the Respondent.  The parties wisely did not expend the

18  resources to develop a delay/disruption case.

19      In the end, <u>substantial elements and inferences of concurrency</u> plagued both sides' delay

20  and disruption claims.

21      The Arbitrator does agree on one basic assertion made by the Claimant, the Respondent

22  owner failed to fully appreciate the nature of the construction Contract into which he entered with

23  the Claimant, <u>after</u> <u>extensive</u> negotiations, with the aid of his construction industry experienced

24  brother.

25  <u>Claims by Claimant and Respondent</u>

26      The Claimant seeks an award of $87,703.10 as to its Contract balance and extra work

27  claims.

28

-3-

FINAL AWARD

1    In addition, Claimant seeks purported "delay damages" of $70,000, consistent with the

2  opinions issued by Claimant's expert witness.

3    That total amount of $157,703.10 is the Claimant's damage claim herein, plus its attorney's

4  fees costs and interest, to be established during the subsequent phase of these proceedings, if

5  needed.

6    Respondent seeks the following alleged damages:

7    -  Loss of rental income in the amount of $22,500.

8    -  Delay damages in the amount of $63,827.

9    -  Cost to complete construction: $178,080.

10    The Arbitrator has carefully reviewed all of those damage categories.

11    **REVIEW OF EVIDENCE**

12  Contract Formation

13    The evidence in this case addressed the formation and performance of the underlying

14  Contract dated December 23, 2012 (the "Contract"), between the Respondent, (the owner) of the

15  subject project (the "Project") and the Claimant.  Claimant, the evidence suggests, is a more or less

16  experienced general contractor building relatively high-end residential projects (for the area), such

17  as the subject project, located 14146 Benbow Street, Baldwin Park, California (the "Project").

18    The Respondent is a Vietnamese immigrant who apparently works in some capacity in the

19  tech industry, and has no apparent background in construction.  He has a relative (a brother) who

20  does have an extensive background in the construction industry.  That brother attended the

21  Arbitration, and was <u>significantly</u> involved (too much so) in some of the underlying events in

22  relation to this case.

23    Contract

24    The evidence suggests that the parties negotiated the Contract over a period of time.  The

25  Claimant showed to the Respondent at least one example of his work, and the parties agreed upon

26  the nature of certain finishes and improvements that the Claimant would construct into the subject

27  home (in reference to the example home that the Claimant showed to the Respondent).

28  Intensive Negotiations

-4-

FINAL AWARD

1   The evidence suggests that the parties negotiated on a line by line, word by word basis, the

2   Contract in its entirety.  The Claimant placed into the Contract provisions requested by the

3   Respondent, including time "penalties" for completing the construction late, a requirement that the

4   Claimant have liability insurance, and a requirement that BDI serve as the construction fund

5   administrator.

6   The evidence suggests that the Claimant complied with each of the drafting changes

7   requested by the Respondent.  The Contract is a fixed price, lump sum agreement, and the Contract

8   is an "integrated agreement," representing the mutual intent of the parties.

9   Respondent's Misunderstanding of the Nature of the Contract

10   A fundamental Claimant theme is that the Respondent inappropriately believes that he

11   could "spend every dollar in the construction Contract fit and finish line items, on labor and

12   materials," and . . . "if he purchased additional quantities of crown molding beyond the

13   construction Contract, there would be no charge to him for the labor associated with installing

14   those additional quantities."  The testimony elicited supports the themes asserted by the Claimant.

15   The Plans

16   The plans were of less than optimum quality, according to the evidence.  The Claimant's

17   principal, Mr. Ma, asked the Respondent to have the architect, Mr. Tai, revise the plans to include

18   certain finish, mechanical, electrical and plumbing items.  The Respondent declined, as he did not

19   want to go through the time and expense of having the drawings revised.  The Arbitrator views this

20   as a significant event, demonstrating the reluctance of the Respondent to incur the expense

21   necessary to provide a clear set of plans for the Project's construction.

22   The parties negotiated at length the different types of finish materials to be included in the

23   Project for the Respondent's home.  Both parties reviewed the architectural drawings, and wrote

24   after each room which finish items would be acceptable and utilized.

25   This evidence was useful to the Arbitrator in understanding the effort made at the beginning

26   by the Respondent and Claimant to identify the nature of the improvements that would be

27   acceptable to the Respondent, on room by room basis, including the finishes.

28

FINAL AWARD

1    Respondent's Requests during Negotiations

2    The Claimant provided the Respondent an initial bid proposal specifying the finish

3    materials for each of the rooms in the home.  Upon receipt of the initial bid, the Respondent asked

4    that the separate line items for overhead and profit be removed and that overhead and profit items

5    be incorporated in each of the work scope line items contained in the bid.

6    The evidence suggests that the Claimant complied with this request.  The stated reason for

7    this was so that the Respondent could compare the bids received from other contractors.

8    It appears that the Respondent's brother advised the Respondent heavily with reference to

9    the negotiations. The negotiations sometimes took place at the home of the Respondent's brother.

10    Agreed Fixed Price Contract

11    After negotiations, the Claimant and Respondent agreed upon the final price for the

12    construction of $508,800, which was based upon the architectural drawings provided by the

13    Respondent's architect Mr. Tai.  I find this exercise to be of assistance in evaluating the case.

14    While the Arbitrator found Mr. Ma to be difficult to understand during his Arbitration

15    testimony, and to be less than compelling, as an Arbitration witness, I found that his actions as a

16    contractor in developing the scope of the Contract scope of work to be prudent and credible.  I

17    likewise found Mr. Chau to be, while amiable, less than compelling as an Arbitration witness.

18    Both Mr. Ma and Mr. Chau were not that persuasive as Arbitration witnesses.  However, I

19    did find the effort by Mr. Ma on the front-end of the Contract negotiations to be credible in terms

20    of developing an understanding by Respondent of the Contract scope of work.

21    Perhaps, such put a significant mark in favor of Claimant as to Contract formation.  His

22    subsequent Project administration did much to contradict that positive impression.

23    The BDI Contract

24    Respondent required BDI be utilized as the fund control manager.  The BDI Contract was

25    signed by the Respondent, Claimant and BDI.

26    The evidence suggests, as is typical of such arrangements, that under the funding

27    arrangement an escrow account be established, and disbursements were made of funds pursuant to

28

-6-

FINAL AWARD

1 requests made by the Claimant and the subcontractors as well as material suppliers, as the Project

2 work progressed.

3       The evidence supports the conclusion that Respondent obtained from BDI information

4 regarding payment records as to payments to subcontractors and material men.  As a consequence,

5 under the Arbitrator's review of the evidence, Respondent challenged a number of subcontractor

6 and Claimant invoices, and the payment process was disrupted.

7       The testimony of Mr. Murphy supports the conclusion that the draw process was disrupted

8 and delayed, which impacted the progress of construction on the Project.  The evidence is not clear,

9 however, as to the nature and extent of any delays perpetuated upon the Project, whereby

10 Respondent challenged payments, and attempted to disrupt the relationship between the Claimant

11 and subcontractors.

12       The evidence supports the conclusion that there were payment disputes between the

13 Respondent and the Claimant, after the Respondent obtained access to BDI's payment records,

14 contrary to the agreement with BDI and the Claimant.

15       Course of Construction

16       There were changes to the Contract necessitated by issues with reference to the plans, and

17 with references to changes of mind by the Respondent.  Mind changes by owners on construction

18 projects are not unusual.  Here, the plans were particularly problematic with reference to the

19 staircase design, and with reference to the details of finish construction.

20       The evidence suggests that the Claimant asked for more detail and information on the

21 interiors, and such were not timely provided by the Respondent.

22       Much delay in providing information on the part of the Respondent contributed to

23 difficulties on the Project and the disputes.  The evidence is not persuasive in that regard.  Several

24 issues contributed to overall delay and disruption on the Project.

25       Windows

26       One was the change to wood windows in the front portion of the house.  Originally there

27 was going to be installed front vinyl transom windows.  There was a change to wood by the

28 Respondent.  There were delays in making the decision to change to wood, which resulted in a

1   delay in the Project.  Unique Door & Glass delayed delivery of the wood transom window and the

2   window transom was installed inside out.

3       Staircase

4       A long standing issue was with reference to the staircase.  It turned out that it was a design

5   issue impacting the staircase installation.  The architect later revised the staircase design so that it

6   no longer cut into the second story TJI joists.

7       Recess Ceilings/Moldings

8       In March of 2012, there was a change order which related to installation of five recess

9   ceilings, as well as installation of crown molding for the ceilings.  There was a change order for the

10  labor to install the crown moldings, but there was no change order for the cost of the materials.

11      The Respondent took the position that he was going to order the materials, but that he

12  expected the Claimant to install the additional moldings at no charge.

13      This goes to what the Claimant contends is the Respondent's mistaken belief that he was

14  entitled to "free work" under some circumstances, whether there was clearly additional work added

15  to the Contract.

16      Doors & Windows

17      Change Order No. 3 related to upgraded exterior windows, entrance doors and patio doors.

18  It was drafted by the Claimant in March of 2012, and it was in the amount of $6,037.42.

19      Framer Payment

20      The evidence suggests that the Respondent withheld the framers' final payment on the

21  Project until the framer agreed to install framing around the low voltage/pre-wire work installed by

22  CZAR.  The framing around the low voltage/pre-wire work was not included in the original

23  Contract scope of work.  This goes to the Respondent's apparent belief that he should not have to

24  pay for additional work he wanted performed, but was not included in the original Contract scope.

25      Kitchen Issues

26      Delay was experienced by the Claimant in obtaining kitchen layout from the Respondent, so

27  that the work in the kitchen could be performed.  The Respondent originally was working with

28  Cabinets Warehouse to design the kitchen layout.  The evidence suggests that the Respondent

1    changed his mind and elected to utilize Alegre Custom Cabinets to design the kitchen layout and

2    cabinetry.  That switch to Alegre Custom Cabinets may have impacted the construction work.

3    Again, there is not sufficient evidence to demonstrate the time impact.

4        Pre-wire Work

5        The evidence suggests that the Respondent caused the Claimant to pay for pre-wire work

6    which was <u>not included</u> in the scope of work of the Contract.  Claimant did not pay CZAR out of

7    the line items for rough electrical for certain pre-wire/low voltage work that was not in Claimant's

8    scope of work.  Respondent disputed whether CZAR had installed the correct type of network

9    wiring, and refused to authorize final payment to CZAR.  This was a confusing circumstance, and

10   we had testimony from a CZAR testimony by phone.  The replacement pre-wire/low voltage

11   contractor was hired to replace CZAR.  There was an alleged delay to the Project, but which not

12   sufficiently proved in terms of time and impact by the Claimant.

13       Change Order No. 4

14       Change Order No. 4 was drafted to address certain additional framing work in the total

15   amount of $9,600, which the Respondent refused to sign or pay for.  This additional framing work

16   related to the stair design issue, and with reference to the revocation of numerous sky lights from

17   the design.

18       Tile Selections Delay

19       In the summer of 2012, the Respondent needed to make selections of tile but allegedly

20   delayed the tile selections, thus, allegedly delaying the Project.  There was not sufficient proof to

21   support the specific time frame of delay in relation to this alleged tile selection issue.

22       Stucco Sub

23       In the fall of 2012, the evidence suggests that the Respondent refused to pay the stucco

24   contractor, Goodyear, an $8,000 payment for work performed, unless Goodyear would agree to

25   install a one-half inch thick stucco coating over the exterior foam moldings at no extra charge, that

26   was not part of the original contract scope.  This represented an increase in the thickness of the

27   stucco from one-eighth of an inch to one-half inch.

28

1    Goodyear refused to install the thicker stucco due to safety concerns, according to the

2    evidence. Goodyear left the Project and was replaced by E Plastering which installed the one-half

3    inch stucco coatings.

4    Change Order No. 2

5    The Respondent delayed supply of additional crown moldings, which were required as a

6    result of Change Order No. 2. The evidence suggests that the Respondent agreed to provide the

7    additional five recessed ceiling crown moldings, but delayed providing that material.

8    Change Order No. 5

9    Change Order No. 5 dated November 2, 2012, purports to "capture" all of the delay costs

10   associated with the change of the transom windows, delays in selecting tiles, doors, and wood

11   moldings. The total cost was allegedly $25,000. The Arbitrator does not find that change order

12   supported by sufficient documentation.

13   Additional Crown Moldings

14   The evidence suggests that the Respondent hired Alegre Custom Cabinets ("Alegre") to

15   install additional crown moldings which allegedly delayed the Project. This action by the

16   Respondent allegedly prevented the Claimant from completing the Project within a "reasonable

17   amount of time," because the Claimant could not perform any additional work while Alegre was

18   performing the installation of the additional crown moldings. The evidence does not suggest that

19   this work by Alegre constituted a disruption to the work of Claimant, or that there could not have

20   been a work around of Alegre.

21   Marble Window Sills

22   The same applies to the Respondents hiring of Color Stone & Design ("Color Stone") to

23   supply and install marble window sills, which were not in the original Contract scope.

24   This work allegedly prevented the Claimant from completing the wood window casings.

25   Color Stone stopped work on the Project because they purportedly under quoted the cost for

26   performing the marble window sills, and could not afford to complete their work.

27   Much of the testimony summarized here is hotly contested, and there are different versions

28   applied to the circumstances by the parties.

-10-
FINAL AWARD

1    Claimant Ceases Work Because Respondent Refused to Pay Claimant and Orders

2    Claimant to Cease Work

3         As was perhaps inevitably going to be the case, Respondent refused to pay the Claimant for

4    work it is performing.  On July 12, 2013, Claimant demanded that Respondent pay the outstanding

5    balance of $106,159.35.  The Respondent refused to pay and shortly thereafter, the Respondent

6    ordered Claimant not to perform any additional work without the Respondent's authorization.

7         On October 2, 2014, Claimant posted a 10 day stop work order and stopped work, because

8    of Respondents purported failure to pay Claimant certain monies due.

9                                   **FINDINGS**

10   The Contract between Claimant and Respondent Was Fully Negotiated and is Integrated

11        The Respondent cannot argue that he did not have a chance to fully negotiate all of the

12   terms of the Contract.  Indeed, he and his brother had a full opportunity to negotiate the terms of

13   the Contract.  He made many changes of mind regarding the interior appointments, after he agreed

14   on a room by room basis as to the interior improvements.

15        I find that the Contract for the Project is an integrated fixed price agreement under

16   applicable law.  The Contract states at paragraph 20 that it "constitutes the entire understanding and

17   agreement between the parties".

18        Each page of the Contract was initialed by the parties.  In addition, the "BDI" contract was

19   fully negotiated and there is an integration clause in the BDI contract.

20        I find that the parole evidence rule bars modification of both contracts by way of testimony

21   from the Respondent, under these circumstances.  I agree with the arguments by the Claimant in his

22   briefing and at the Arbitration itself.  The Contract in question is a "fixed price lump sum"

23   agreement.

24        I find the testimony on this point of the Claimants' expert Mr. Ossman be hopeful.

25        I find that the Respondent was not permitted to "spend all the monies in finish line items on

26   material and labor".  I agree with the testimony of Mr. Ossman on this point alone, where he stated

27   that: "if there were any savings on any of the line items in the construction cost breakdown, those

28   savings were owed to" the Claimant and not to the Respondent.  This is because the Contract was a

1  fixed priced lump sum Contract. I find in favor of the Claimant and against the Respondent in

2  terms of interpretation of the Contract in any other matter than just stated.

3     The Respondent was Inappropriate in Obtaining Access to the Construction Payment

4     Records

5     I find that the Respondent was acting contrary to the terms of the BDI contract in obtaining

6  access to the payment records of BDI, and in attempting to negotiate payment requests from

7  Claimant to BDI. I find that this constituted somewhat of an interference with the draw process

8  administered by BDI. I find Mr. Murphy of BDI persuasive when he testified that the draw process

9  on this matter was the worst record that he had seen in his entire 50 year career. I also find that the

10  Respondent succeeded in requiring the Claimant to submit its entire pay request through the

11  Respondent for payment, contrary to the agreement of the parties. This was a situation that did not

12  reflect well on the credibility of the Respondent.

13     I Find that the Respondent Breached the Contract by Refusing to Pay the Claimant

14     For Work Which had been Performed, Including the Change Orders

15     I agree with the contention of the Claimant that the Respondent refused to pay the Claimant

16  for work which had been performed, including the change orders. I find no appropriate basis

17  therefore on the part of the Respondent. I find that the Respondent breached the Contract between

18  the parties, and that this breach was a substantial factor and cause of the damages asserted by the

19  Claimant in terms of unpaid Contract amount of $87,703.10.

20     I Do Not Find That the Claimant has Made Its Delay Case against the Respondent

21     There is a contention by the Claimant that the Respondent delayed the selection of

22  materials, often changed design elements and provided defective architectural plans. There is also

23  an allegation that the Respondent frequently hired trade contractors. There are Claimant

24  allegations that the alleged delays were caused by the Respondent. I do not find the testimony by

25  Mr. Ma during the Arbitration persuasive that the Respondent substantially delayed choices

26  relating to the Project's cabinetry, tile and finished carpentry, and that such caused the delay. Nor

27  do I find that these alleged delays are shown to result in delay damages, as articulated by the

28  Claimant. I do not find persuasive the testimony by the Claimant's delay expert, nor by the

1  Claimant to the effect that the Claimant suffered $70,000 in delay damages. The causation and

2  delay damage evidence is not persuasive in the Arbitration record.

3       Mr. Ossman opined that the Respondent's failure to timely make material selections,

4  purport changes in design elements and providing defective plans, as well as direct hiring of trade

5  contractors, "all substantially delayed the completion of work by" Claimant. These are

6  conclusory statements to the effect that said conduct purportedly <u>caused</u> substantial delays.

7       I do not find persuasive the Ossman testimony that the Claimant was delayed a total of 14

8  months, due to the Respondent's actions. The unsupported contention that Mr. Ossman valued the

9  Claimant's expended overhead costs at $70,000 is not persuasive.

10      I have carefully studied Exhibits 348, 3498, 350 and 351. I do not find those exhibits and

11  the related testimony from Mr. Ossman persuasive. I do not find that the said evidence supports an

12  award of $70,000 in delay damages, or any delay damages. The Arbitrator is mindful of

13  Respondents following discussed delay claim.

14      The Arbitrator finds, under all the circumstances, that there is a overriding level of

15  concurrency on the competing delay damage claims, and that the Arbitrator finds it appropriate to

16  make <u>no delay damage award to either party</u>, under all of the circumstances. That is what the

17  evidence and circumstances require, after the Arbitrator reviewed all of the evidence here. Neither

18  side did the requisite delay workup as to the dailies.

19      Accordingly, the Arbitrator makes no delay damage award to either party under the

20  circumstances.

21      <u>Respondent's Delay Damages Claim</u>

22      Respondent asserts entitlement to "delay damages" of $63,827 under Article II of the

23  Contract; pursuant to a clause named "Construction Termination Data and Penalty Clause". This is

24  a Contract drafted initially by the Claimant, though it was much negotiated by Claimant and

25  Respondent.

26      Claimant makes a questionable argument that the "penalty" clause is somehow legally

27  impermissible, though his client negotiated that clause, based on a Contract form that the <u>Claimant</u>,

28  itself, drafted. The claim that the "penalty clause" somehow violates California law regarding

1  liquidated damages turns the world somewhat upside down. Really? Citation of California

2  Authority under the El Centro case is not helpful.

3       This is not a concept the Arbitrator is prepared to accept, and is not to the Arbitrator's

4  understanding of the law. The argument that the Respondent claims additional days to complete

5  construction of 859 days is much "exaggerated" and not persuasive.

6       It is the Arbitrator's view that both sides, and their experts, engage in a strained

7  understanding of the underlying facts. If there was ever a case that was ready made for a finding of

8  concurrency as to delay claims, it is this case.

9       There is no "penalty" buried within the Contract documentation here, particularly as to a

10  liquidated damages clause calling for $2,500 for liquidated damages or $83.00 per day liquidated

11  damages. That just will not move the needle in a post millennium circumstance.

12       Respondent provides no delay damage calculation. There is no basis for a $63,827 delay

13  award (or any delay award to Respondent, under these circumstances, with reference to 859 days of

14  purported delay to Respondent).

15       The Claimant is Not Responsible for Design Defects in the Architectural Plans

16       In a somewhat creative argument, the Respondent attempts to place at the feet of the

17  Claimant defects in the architect design with reference to the stairway. The Respondent argues that

18  delays associated with the stairway design are deficiencies which should be visited upon the

19  Claimant, based upon the Claimant's alleged failure to question certain dimensions in the

20  architectural drawings, before the Claimant started work. This has to do with the Respondent's

21  interpretation of Notes 2, 6, and 22 of the architectural plans.

22       The Claimant's expert, Melton, testified that the Respondent's interpretation of these Notes

23  2, 6, and 22 makes no reference to the Claimant, providing a "guarantee" for the architect's design,

24  nor do the Notes provide an obligation for the Claimant to catch design defects. Rather, the Notes

25  state that the contractor has the obligation to verify dimensions and conditions, as is typical in the

26  industry.

27       The Arbitrator finds persuasive the testimony of Mr. Melton to the effect that verifications

28  of dimensions is for the purpose of insuring that there will be sufficient space to build, not for

-14-
FINAL AWARD

1  catching architect design defects, which contractors are not trained to do.  The Melton testimony

2  persuaded the Arbitrator that the Claimant satisfied it obligation to verify dimensions of the

3  stairwell.

4    The Respondent, in the Arbitrator's view, not Claimant, is responsible for his architect's

5  stairway design deficiencies, because Respondent impliedly warranted that the plans were free

6  from defect, and that the building could be constructed from the plans.  The burden of design

7  defects by the Respondent's architect rests upon the Respondent, not the Claimant.

8    The Claimant Satisfied Its Obligation to Secure the Job Site

9    The Claimant, under the evidence, satisfied its obligation to secure the job site by providing

10  a chain link fence around the Project, and by providing locks, on all the doors of the subject home.

11  The Claimant also changed the locks on the chain link fence several times.  The testimony of Mr.

12  Garcia and of the Claimant confirmed that the locks were changed several times.

13    While there were break-ins, those break-ins are not the fault of the Claimant.  The Claimant

14  did inform the Respondent that a temporary alarm system could be purchased, if the Respondent

15  wanted to pay the extra cost associated with the temporary alarm system.  The Respondent declined

16  to pay for a temporary alarm system.  The Respondent made his choices.

17    The burglaries in question occurred on September 25, 2013 and December 6, 2013, after

18  counsel for the Respondent demanded that Claimant not perform any additional work at the

19  Project.

20    The evidence suggests that the Claimant took reasonable steps to secure the Project while

21  the Claimant was working at the Project.

22    The Contract Excludes Claimant Responsibility for Public Utility Work

23    Page 4 of the Construction Cost Breakdown within the Contract, excludes responsibility for

24  any public utilities work.

25    Oval Flex Crown Molding Measurement is Not the Responsibility of Claimant

26    Change Order No. 2, signed by the parties, only obligated Claimant to install the crown

27  molding at the five recessed ceilings.  Point 5 in the Change Order No. 2 calls for molding

28

1  installation labor for five new added recessed ceilings based on revised plans dated February 14,

2  2011.  The ninth section of Change Order No. 2 states:

3         "This change order amount is <u>not</u> including . . . the moldings and

4         materials for five new added recessed ceiling areas . . . "

5         The evidence suggests that <u>supply of the crown molding</u> for the five recessed ceilings was

6  the <u>obligation of the Respondent</u>, including the <u>oval flex crown molding</u> for the entertainment room

7  recessed ceiling.  Supply of the measurements for the molding and actually ordering the molding

8  was the Respondent's obligation under the evidence.  The construction notes requiring Claimant to

9  verify the conditions were inapplicable, under the evidence, to the oval flex crown molding.

10        Respondent hired Mr. Garcia to manufacture and install additional quantities of crown

11  molding throughout the home.  This may have contributed to delay of the Claimant's completion of

12  the Project to some extent.  The evidence is not clear.  Mr. Ma testified that Claimant was unable to

13  finish the painting, tile and other finish trades to some extent.  This is allegedly because Mr. Garcia

14  was still installing crown molding, wood canopies and wood columns, in addition to certain other

15  finished carpentry items.  The requisite delay workup based on daily record was not done, so the

16  requisite proof was not provided.

17        The evidence suggests that the crown molding and finish carpentry work in this regard was

18  not the responsibility of the Claimant.

19  <u>Exterior Molding Delays</u>

20        There was a dispute at the Arbitration as to responsibility for the exterior stucco and the

21  foam moldings. That is as to the one-half inch thickness.  The Project plans and Contract did not

22  state that the foam moldings should be one-half inch thick.  Mr. Ma testified that the one-half inch

23  stucco on foam moldings was <u>not the standard in the industry</u>.  Goodyear, the initial stucco

24  contractor, walked off the job because Respondent would not release an $8,000 progress payment

25  to Goodyear, unless it installed stucco at one-half inch thickness on the exterior foam moldings.  A

26  second stucco contractor, E Plastering, was hired to finish the stucco work.  Once E Plastering was

27  hired, Respondent continued withholding payments for the stucco work.  There is much dispute as

28  to the extent of what Respondent knew about the amounts being made to E Plastering and

1  Goodyear, because of it obtaining information from BDI contrary to the Contract between BDI,

2  Respondent and Claimant.

3          Much time was spent at the Arbitration as to characterization of the motives of Respondent

4  and Claimant concerning the payments to subcontractors, including E Plastering.  The evidence

5  suggests that Respondent withheld payments from Claimant and the stucco subcontractors.

6  Claimant argues that this was all a part of Respondent's attempt to secure "free construction."

7          Each of the Claimant's Change Orders are Valid and Enforceable

8          I find persuasive the testimony of Mr. Ossman and Claimant's principal Mr. Ma as to the

9  change orders.  The change orders by Claimant are enforceable, and Claimant is owed a total of

10  $87,703.10 for Contract and extra work.  The Respondent has not disputed that the work covered

11  by Change Order Nos. 3 – 20 was performed.  Change Order Nos. 3 – 20 are valid and enforceable

12  against Respondent.

13          Respondent's Loss of Rental Claim

14          While the Arbitrator does not conclude that the Respondent has established a basis for a

15  loss of rental claim in the amount of $22,500, there is a basis to conclude that the Claimant could

16  have better coordinated and managed the timing of the demolition of the rental property at the

17  Project.  The Arbitrator concludes, after reviewing all of the evidence, that the Claimant did not

18  properly administer this Project from a number of standpoints.

19          If the Claimant had done a better job of managing this Project, a lot of its delay difficulties

20  could have been avoided.

21          True, the Respondent was somewhat predatory, and was deliberately opaque in his

22  understanding of the construction contracting circumstances.  'The situation was not aided by the

23  Respondent's brother, who meddled and gave bad advice to his brother on almost every occasion,

24  thus misapplying his partial construction knowledge.

25          It is the Arbitrator's conclusion that the Claimant could have done a better job of

26  coordinating the rental unit tear down under the Contract.  The Arbitrator's understanding of

27  Article II of the Contract is to the effect that Claimant was to timely advise Respondent about the

28  tenant move out.

1    This provision suggested that there was to be effective coordination with the Respondent so

2   that the move out of the tenant would be required only when necessary. The electrical line, true

3   enough, needed to be installed, but not at the expense of rental income for the Respondent. It is the

4   Arbitrator's conclusion that the Respondent has, to <u>some limited extent</u>, met his evidentiary burden

5   to prove that he has been <u>somewhat damaged</u> with reference to the loss of rental for perhaps <u>three

6   months of lost rentals</u> in the total amount of $4,500 total, given a $1,500 per month rental. That is

7   the Arbitrator's findings.

8    <u>Respondent Has Not Established a Basis for an Award of Alleged Cost to Complete</u>

9    <u>Damages by Claimant</u>

10    The Claimant argues that the measure of damages for breach of Contract to construct

11   improvements on real property (where the work is to be done on Respondent's property) is the

12   reasonable cost to the Respondent to finish the work in accordance with the Contract.

13    Here, the remaining construction Contract balance is $178,080. Thus, the Respondent has

14   not paid $178,080 to Claimant. The Claimant argued that it will cost $178,080 in order to complete

15   construction and argues that the Claimant should pay Respondent that amount.

16    If it were true that it would cost $178,080 to complete, the Respondent would have zero

17   damages because there remains a Contract balance of $178,080.

18    Respondent argues that he is entitled to receive that money.

19    The Respondent argues that he is entitled $178,080 "for free" according to Claimant.

20    The Arbitrator agrees that this is not a proper position on Respondents part under California

21   law.

22    The Arbitrator finds that the Respondent has failed to prove that the Claimant breached the

23   underlying Contract here. In order to be liable for damages at all, the Claimant must be shown to

24   have breached legal obligations owed to Respondent. The Arbitrator has not made such a finding.

25   The Respondent has presented no evidence that Claimant refused to perform work or that the

26   Claimant performed defective construction. The Arbitrator finds that Respondent ordered Claimant

27   to stop work on the Project.

28

1  Aside from the flaws in Respondent's cost to complete argument, Claimant is not liable to

2  Respondent for any costs to complete damages.  This part of Respondent's claim must fail.

3  ### NET BASE AWARD

4  The Arbitrator hereby awards to Claimant the sum of $87.703.10, less $4,500 (for lost

5  rentals), for a total of $83,203.10 as the total net award to Claimant against Respondent, subject to

6  further proceedings and deliberations regarding interest, costs, and attorney's fees, to the extent

7  such are appropriate.

8  The Arbitrator Designated the Claimant the Prevailing Party Herein for Purposes

9  Of the Arbitrator Making Findings Regarding Matters of Cost, Interest and Attorney's Fees

10  The Arbitrator finds that the total costs requested by Claimant of $81,853.22 (less $2,500

11  for expert fees) is appropriate, for a total of $79,353.22.  That is the cost award to Claimant.  There

12  is no basis to disallow any cost other than the aforementioned expert costs.  The JAMS costs,

13  Reporter fees and language select fees, plus miscellaneous costs, are all proper, less the said expert

14

15  costs.

16  Expert Fees

17  The Arbitrator finds little specific contractual and legal basis for the award of expert fees

18  here.  Normally, the Arbitrator expects the contract between the parties to unequivocally call for

19  the award of expert fees to the prevailing party in so many words.  There is no such language here.

20  The parties could have put that language in their contract.  However, here the Respondent was on

21  again off again about his defect action, which was expert intensive.  Under all the circumstances,

22

23  the Arbitrator awards Claimant $25,000.00 of his incurred expert fees in this case, in the exercise

24  of the Arbitrator's discretion.

25  Interest

26  The Arbitrator awards the full amount of the requested interest to Claimant of $10,805.51.

27

28

-19-
FINAL AWARD

<u>Attorney's Fees</u>

The Arbitrator has considered ALL of the arguments raised in the papers by the parties on the attorneys fee issue, including as to the $148,977.00 of fees incurred through the Arbitration, the bankruptcy issues and delay question, the lien issues, alleged fee duplication issue, the effect of the interim effect of the settlement offer, and other contextual issues. The Arbitrator, thus, awards Claimant, as the prevailing party, $178,500.00 as the attorneys fee award in this case.

<u>Total Fee, Cost, and Interest Award to Claimant</u>

The Arbitrator, therefore, makes the total award of $293,658.73 for fees, cost and interest to Claimant against Respondent.

TOTAL FINAL AWARD

Adding the total Net Base Award of $83,203.10 to this fees, costs and interest award of $293,658.73, results in a total Final Award to Claimant of $376,861.83 to Claimant against Respondent.


Dated:  May 4, 2015                                By: _____

                                                        GEORGE D. CALKINS, II, Esq.
                                                        Arbitrator

## **PROOF OF SERVICE BY EMAIL & U.S. MAIL**

Re: Reliable Design and Construction, Inc. vs. Chau, Jimmy
Reference No. 1220046673

I, JENNY LEE, not a party to the within action, hereby declare that on  May 04, 2015 I served the

attached FINAL AWARD on the parties in the within action by Email and by depositing true copies thereof

enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Santa Monica,

CALIFORNIA, addressed as follows:

Aaron Flores Esq.
Richard Mah Esq.
Hunt, Ortmann, et al.
301 North Lake Ave.
7th Floor
Pasadena, CA  91101-1807
Phone: 626-440-5200
flores@huntortmann.com
mah@huntortmann.com
 Parties Represented:
 Reliable Design and Construction, Inc.

Ms. Bhupinder K. Malik
L/O Edward C. Ip, & Assoc.
4424 Santa Anita Ave.
Suite 201
El Monte, CA  91731
Phone: 626-228-0638
malik@lawyer4property.com
 Parties Represented:
 Jimmy Chau

I declare under penalty of perjury the foregoing to be true and correct. Executed at Santa Monica,

CALIFORNIA on  May 04, 2015.

_____
JENNY LEE
jlee@jamsadr.com

**EXHIBIT E**

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Central District of California | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:<br><br>Hue Chau, aka Jimmy Chau | Case Number:<br><br>2:15-BK-10239-SK |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Reliable Design and Construction Inc.

**COURT USE ONLY**

| Name and address where notices should be sent:<br>Richard Mah, Esq.<br>Hunt Ortmann Palffy Nieves Darling & Mah, Inc.<br>301 North Lake Avenue, 7th Floor, Pasadena, California 91101-1807<br><br>Telephone number: (626) 440-5200    email: mah@huntortmann.com; jones@huntortmann.com | ❑ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>(*If known*)<br><br>Filed on:_____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br><br><br>Telephone number:       email: | ❑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**       $                 376,861.83

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Arbitration award for breach of contract
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br><br>__ __ __ __ | **3a. Debtor may have scheduled account as:**<br><br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>_____<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**

$                 0.00

**Nature of property or right of setoff:** ☑Real Estate  ❑Motor Vehicle  ❑Other
**Describe:**

**Basis for perfection:** Mechanic's Lien

**Value of Property:** $  410,212.71

**Amount of Secured Claim:** $   157,703.10

**Annual Interest Rate**_____% ❑Fixed  or  ❑Variable
**(when case was filed)**

**Amount Unsecured:** $   219,158.73

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ❑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ❑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ❑ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). | **Amount entitled to priority:**<br><br>$_____ |
|---|---|---|---|
| ❑ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ❑ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ❑ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___). | |

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                          2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.       ☐ I am the creditor's authorized agent.       ☐ I am the trustee, or the debtor,       ☐ I am a guarantor, surety, indorser, or other codebtor.
                                                                                or their authorized agent.                      (See Bankruptcy Rule 3005.)
                                                                                (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   John Ma
Title:        President
Company:      Reliable Design and Construction Inc.                              _John Ma_                    05/05/2015
Address and telephone number (if different from notice address above):          (Signature)                  (Date)
              10904 Grand Avenue, Temple City, CA 91780

Telephone number: (626) 905-5345      email: reliable388@gmail.com
*Penalty for presenting fraudulent claim:*  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5.   Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6.  Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7.  Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8.  Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Case 2:15-bk-10238-SK  Claim 4  Filed 05/06/15  Desc Main Document  Page 3 of 41

B10 (Official Form 10) (04/13)  3

---

## _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

Case 2:15-bk-10239-SK    Claim 4    Filed 05/06/15    Desc Main Document    Page 4 of 41

ATTACHMENT A

## Attachment A

Itemization of Award

On May 4, 2015, the Arbitrator entered his Final Award (the "Final Award") in favor of creditor
Reliable Design & Construction, Inc., which is calculated as follows.

| | |
|---|---|
| Base Award Amount: | $83,203.10 |
| Interest Award: (pursuant to Cal. Civ. Code § 3287) | $10,805.51 |
| Attorney's Fees: | $178,500.00 |
| Expert Fees: | $25,000.00 |
| Costs: | $79,353.22 |
| **Total:** | **$376,861.83** |

*See* Final Award at pp. 19:4-20:15.  A copy of the Arbitrator's Final Award is attached hereto as
**Exhibit B**.

ATTACHMENT B

George D. Calkins, II, Esq.
JAMS
1601 Cloverfield Blvd., Suite 370-S
Santa Monica, CA 90404
T: 310-309-392-3044
F: 310-396-7576

Arbitrator

## IN THE ARBITRATION OF

| | |
|---|---|
| RELIABLE DESIGN & CONSTRUCTION, INC., a California corporation, | ) JAMS Ref. No.: 1220046673 |
| Claimant, | ) **FINAL AWARD** |
| v. | ) Arbitration Dates: |
| JIMMY CHAU, an individual, | ) July 28 - August 1, 2014 and August 7, 2014 |
| Respondent. | ) |
| JIMMY CHAU, an individual, | ) |
| Cross-Complainant, | ) |
| v. | ) |
| RELIABLE DESIGN & CONSTRUCTION, INC., a California corporation, | ) |
| Cross-Respondent. | ) |

## **INTRODUCTION**

We conducted the Arbitration concerning this single family home construction project last summer. The Arbitration was preceded by a long procedural process involving a number of continuances and a mediation.

-1-
FINAL AWARD

1       History

2           I served as both mediator and Arbitrator, pursuant to a stipulation of the parties.

3           Counsel for both the Claimant Reliable Design & Construction, Inc. ("Claimant"), and

4   Respondent Jimmy Chau ("Respondent"), the contractor and owner, respectively, served their

5   clients well in a case, which was not very well administered by the owner and contractor during the

6   underlying construction Project.

7           It was a troubled Project from day one.  The execution of the Project was not a model of

8   Contract administration by the contractor.  Similarly, the Respondent engaged in numerous

9   practices that were ill advised and counter-productive (under the advice of his brother, who should

10  have known better.)  This included the Respondent obtaining an incomplete and ineffective set

11  design documents, and engaging in numerous changes to the design.

12          Also, the owner Respondent undertook to interfere with the construction process by

13  working directly with many subcontractors and by insisting on renegotiating virtually every

14  financial aspect of the Project, after closely negotiating the fixed Contract price that the parties

15  agreed upon in their underlying Contract negotiations.  The consequence was that the parties ended

16  up with a broken Project and inevitable legal dispute.

17          The Arbitrator has carefully considered the evidence, and the briefing presented by the

18  parties.  Furthermore, the Arbitrator reaches the decision herein relying (as he must) on his

19  perception of the credibility of the positions of the parties, both as articulated in their testimony,

20  and as demonstrated by the questionable "quality" of the evidence presented by the parties at the

21  Arbitration.

22      Troubled Project

23          Try, as able counsel might for both sides, they really could not salvage what was a trouble

24  plagued residential construction project, that was frankly doomed to fail from the beginning, nor

25  could counsel make sense of that Project during this overly prolonged legal dispute.  The Arbitrator

26  makes herein a partial award in favor of the Claimant, but does not award the Claimant everything

27  he asks for.

28

-2-
FINAL AWARD

1    Furthermore, the Arbitrator does not find merit in the majority of the assertions by the

2  homeowner Respondent.  This case was also burdened by the, on again off again, construction

3  defect claims pursued by the Respondent.  In the end, the Respondent abandoned his construction

4  defect claims.

5    The sequence of events leading to assertion, withdrawal, reassertion and once again

6  withdrawal of the construction defect claims by the Respondent, characterizes the unfortunate

7  nature of this dispute as it proceeded forward from the perspective of the Respondent.

8    The Arbitrator was not impressed by much of the evidence presented by <u>both sides</u> during

9  the Arbitration, especially the Respondent.  Had this case been presented at jury trial, much of the

10 evidence advanced by the parties would not have passed the scrutiny of a trial judge serving in a

11 jury trial.  This is the case as to the construction expert presented by Respondent.

12 <u>Delay Cases Were Weak</u>

13   Both sides asserted delay claims and the Arbitrator concludes, after much thought and

14 scrutiny that neither side presented credible evidence of a delay or disruption case.  While the

15 Claimant contractor presented testimony by a heretofore credible construction expert, none of the

16 nuts and bolts of a credible delay or disruption claim were presented by the Claimant in the

17 judgment of the Arbitrator, nor did the Respondent.  The parties wisely did not expend the

18 resources to develop a delay/disruption case.

19   In the end, <u>substantial elements and inferences of concurrency</u> plagued both sides' delay

20 and disruption claims.

21   The Arbitrator does agree on one basic assertion made by the Claimant, the Respondent

22 owner failed to fully appreciate the nature of the construction Contract into which he entered with

23 the Claimant, <u>after extensive</u> negotiations, with the aid of his construction industry experienced

24 brother.

25 <u>Claims by Claimant and Respondent</u>

26   The Claimant seeks an award of $87,703.10 as to its Contract balance and extra work

27 claims.

28

-3-
FINAL AWARD

1  In addition, Claimant seeks purported "delay damages" of $70,000, consistent with the

2  opinions issued by Claimant's expert witness.

3  That total amount of $157,703.10 is the Claimant's damage claim herein, plus its attorney's

4  fees costs and interest, to be established during the subsequent phase of these proceedings, if

5  needed.

6  Respondent seeks the following alleged damages:

7  -  Loss of rental income in the amount of $22,500.

8  -  Delay damages in the amount of $63,827.

9  -  Cost to complete construction: $178,080.

10  The Arbitrator has carefully reviewed all of those damage categories.

11  **REVIEW OF EVIDENCE**

12  Contract Formation

13  The evidence in this case addressed the formation and performance of the underlying

14  Contract dated December 23, 2012 (the "Contract"), between the Respondent, (the owner) of the

15  subject project (the "Project") and the Claimant.  Claimant, the evidence suggests, is a more or less

16  experienced general contractor building relatively high-end residential projects (for the area), such

17  as the subject project, located 14146 Benbow Steet, Baldwin Park, California (the "Project").

18  The Respondent is a Vietnamese immigrant who apparently works in some capacity in the

19  tech industry, and has no apparent background in construction.  He has a relative (a brother) who

20  does have an extensive background in the construction industry.  That brother attended the

21  Arbitration, and was significantly involved (too much so) in some of the underlying events in

22  relation to this case.

23  Contract

24  The evidence suggests that the parties negotiated the Contract over a period of time.  The

25  Claimant showed to the Respondent at least one example of his work, and the parties agreed upon

26  the nature of certain finishes and improvements that the Claimant would construct into the subject

27  home (in reference to the example home that the Claimant showed to the Respondent).

28  Intensive Negotiations

-4-

FINAL AWARD

The evidence suggests that the parties negotiated on a line by line, word by word basis, the Contract in its entirety. The Claimant placed into the Contract provisions requested by the Respondent, including time "penalties" for completing the construction late, a requirement that the Claimant have liability insurance, and a requirement that BDI serve as the construction fund administrator.

The evidence suggests that the Claimant complied with each of the drafting changes requested by the Respondent. The Contract is a fixed price, lump sum agreement, and the Contract is an "integrated agreement," representing the mutual intent of the parties.

<u>Respondent's Misunderstanding of the Nature of the Contract</u>

A fundamental Claimant theme is that the Respondent inappropriately believes that he could "spend every dollar in the construction Contract fit and finish line items, on labor and materials," and . . . "if he purchased additional quantities of crown molding beyond the construction Contract, there would be no charge to him for the labor associated with installing those additional quantities." The testimony elicited supports the themes asserted by the Claimant.

<u>The Plans</u>

The plans were of less than optimum quality, according to the evidence. The Claimant's principal, Mr. Ma, asked the Respondent to have the architect, Mr. Tai, revise the plans to include certain finish, mechanical, electrical and plumbing items. The Respondent declined, as he did not want to go through the time and expense of having the drawings revised. The Arbitrator views this as a <u>significant event</u>, demonstrating the reluctance of the Respondent to incur the expense necessary to provide a clear set of plans for the Project's construction.

The parties negotiated at length the different types of finish materials to be included in the Project for the Respondent's home. Both parties reviewed the architectural drawings, and wrote after each room which finish items would be acceptable and utilized.

This evidence was useful to the Arbitrator in understanding the effort made at the beginning by the Respondent and Claimant to identify the nature of the improvements that would be acceptable to the Respondent, on room by room basis, including the finishes.

1     Respondent's Requests during Negotiations

2       The Claimant provided the Respondent an initial bid proposal specifying the finish

3  materials for each of the rooms in the home.  Upon receipt of the initial bid, the Respondent asked

4  that the separate line items for overhead and profit be removed and that overhead and profit items

5  be incorporated in each of the work scope line items contained in the bid.

6       The evidence suggests that the Claimant complied with this request.  The stated reason for

7  this was so that the Respondent could compare the bids received from other contractors.

8       It appears that the Respondent's brother advised the Respondent heavily with reference to

9  the negotiations. The negotiations sometimes took place at the home of the Respondent's brother.

10     Agreed Fixed Price Contract

11       After negotiations, the Claimant and Respondent agreed upon the final price for the

12  construction of $508,800, which was based upon the architectural drawings provided by the

13  Respondent's architect Mr. Tai.  I find this exercise to be of assistance in evaluating the case.

14       While the Arbitrator found Mr. Ma to be difficult to understand during his Arbitration

15  testimony, and to be less than compelling, as an Arbitration witness, I found that his actions as a

16  contractor in developing the scope of the Contract scope of work to be prudent and credible.  I

17  likewise found Mr. Chau to be, while amiable, less than compelling as an Arbitration witness.

18       Both Mr. Ma and Mr. Chau were not that persuasive as Arbitration witnesses.  However, I

19  did find the effort by Mr. Ma on the front-end of the Contract negotiations to be credible in terms

20  of developing an understanding by Respondent of the Contract scope of work.

21       Perhaps, such put a significant mark in favor of Claimant as to Contract formation.  His

22  subsequent Project administration did much to contradict that positive impression.

23     The BDI Contract

24       Respondent required BDI be utilized as the fund control manager.  The BDI Contract was

25  signed by the Respondent, Claimant and BDI.

26       The evidence suggests, as is typical of such arrangements, that under the funding

27  arrangement an escrow account be established, and disbursements were made of funds pursuant to

28

1   requests made by the Claimant and the subcontractors as well as material suppliers, as the Project

2   work progressed.

3       The evidence supports the conclusion that Respondent obtained from BDI information

4   regarding payment records as to payments to subcontractors and material men.  As a consequence,

5   under the Arbitrator's review of the evidence, Respondent challenged a number of subcontractor

6   and Claimant invoices, and the payment process was disrupted.

7       The testimony of Mr. Murphy supports the conclusion that the draw process was disrupted

8   and delayed, which impacted the progress of construction on the Project.  The evidence is not clear,

9   however, as to the nature and extent of any delays perpetuated upon the Project, whereby

10  Respondent challenged payments, and attempted to disrupt the relationship between the Claimant

11  and subcontractors.

12      The evidence supports the conclusion that there were payment disputes between the

13  Respondent and the Claimant, after the Respondent obtained access to BDI's payment records,

14  contrary to the agreement with BDI and the Claimant.

15  <u>Course of Construction</u>

16      There were changes to the Contract necessitated by issues with reference to the plans, and

17  with references to changes of mind by the Respondent.  Mind changes by owners on construction

18  projects are not unusual.  Here, the plans were particularly problematic with reference to the

19  staircase design, and with reference to the details of finish construction.

20      The evidence suggests that the Claimant asked for more detail and information on the

21  interiors, and such were not timely provided by the Respondent.

22      Much delay in providing information on the part of the Respondent contributed to

23  difficulties on the Project and the disputes.  The evidence is not persuasive in that regard.  Several

24  issues contributed to overall delay and disruption on the Project.

25  <u>Windows</u>

26      One was the change to wood windows in the front portion of the house.  Originally there

27  was going to be installed front vinyl transom windows.  There was a change to wood by the

28  Respondent.  There were delays in making the decision to change to wood, which resulted in a

-7-
FINAL AWARD

1   delay in the Project.  Unique Door & Glass delayed delivery of the wood transom window and the

2   window transom was installed inside out.

3       <u>Staircase</u>

4       A long standing issue was with reference to the staircase.  It turned out that it was a design

5   issue impacting the staircase installation.  The architect later revised the staircase design so that it

6   no longer cut into the second story TJI joists.

7       <u>Recess Ceilings/Moldings</u>

8       In March of 2012, there was a change order which related to installation of five recess

9   ceilings, as well as installation of crown molding for the ceilings.  There was a change order for the

10  labor to install the crown moldings, but there was no change order for the cost of the materials.

11      The Respondent took the position that he was going to order the materials, but that he

12  expected the Claimant to install the additional moldings at no charge.

13      This goes to what the Claimant contends is the Respondent's mistaken belief that he was

14  entitled to "free work" under some circumstances, whether there was clearly additional work added

15  to the Contract.

16      <u>Doors & Windows</u>

17      Change Order No. 3 related to upgraded exterior windows, entrance doors and patio doors.

18  It was drafted by the Claimant in March of 2012, and it was in the amount of $6,037.42.

19      <u>Framer Payment</u>

20      The evidence suggests that the Respondent withheld the framers' final payment on the

21  Project until the framer agreed to install framing around the low voltage/pre-wire work installed by

22  CZAR.  The framing around the low voltage/pre-wire work was <u>not</u> included in the original

23  Contract scope of work.  This goes to the Respondent's apparent belief that he should not have to

24  pay for additional work he wanted performed, but was not included in the original Contract scope.

25      <u>Kitchen Issues</u>

26      Delay was experienced by the Claimant in obtaining kitchen layout from the Respondent, so

27  that the work in the kitchen could be performed.  The Respondent originally was working with

28  Cabinets Warehouse to design the kitchen layout.  The evidence suggests that the Respondent

1  changed his mind and elected to utilize Alegre Custom Cabinets to design the kitchen layout and

2  cabinetry.  That switch to Alegre Custom Cabinets may have impacted the construction work.

3  Again, there is not sufficient evidence to demonstrate the time impact.

4      Pre-wire Work

5      The evidence suggests that the Respondent caused the Claimant to pay for pre-wire work

6  which was not included in the scope of work of the Contract.  Claimant did not pay CZAR out of

7  the line items for rough electrical for certain pre-wire/low voltage work that was not in Claimant's

8  scope of work.  Respondent disputed whether CZAR had installed the correct type of network

9  wiring, and refused to authorize final payment to CZAR.  This was a confusing circumstance, and

10  we had testimony from a CZAR testimony by phone.  The replacement pre-wire/low voltage

11  contractor was hired to replace CZAR.  There was an alleged delay to the Project, but which not

12  sufficiently proved in terms of time and impact by the Claimant.

13      Change Order No. 4

14      Change Order No. 4 was drafted to address certain additional framing work in the total

15  amount of $9,600, which the Respondent refused to sign or pay for.  This additional framing work

16  related to the stair design issue, and with reference to the revocation of numerous sky lights from

17  the design.

18      Tile Selections Delay

19      In the summer of 2012, the Respondent needed to make selections of tile but allegedly

20  delayed the tile selections, thus, allegedly delaying the Project.  There was not sufficient proof to

21  support the specific time frame of delay in relation to this alleged tile selection issue.

22      Stucco Sub

23      In the fall of 2012, the evidence suggests that the Respondent refused to pay the stucco

24  contractor, Goodyear, an $8,000 payment for work performed, unless Goodyear would agree to

25  install a one-half inch thick stucco coating over the exterior foam moldings at no extra charge, that

26  was not part of the original contract scope.  This represented an increase in the thickness of the

27  stucco from one-eighth of an inch to one-half inch.

28

1   Goodyear refused to install the thicker stucco due to safety concerns, according to the
2   evidence.  Goodyear left the Project and was replaced by E Plastering which installed the one-half
3   inch stucco coatings.

4   Change Order No. 2

5   The Respondent delayed supply of additional crown moldings, which were required as a
6   result of Change Order No. 2.  The evidence suggests that the Respondent agreed to provide the
7   additional five recessed ceiling crown moldings, but delayed providing that material.

8   Change Order No. 5

9   Change Order No. 5 dated November 2, 2012, purports to "capture" all of the delay costs
10  associated with the change of the transom windows, delays in selecting tiles, doors, and wood
11  moldings.  The total cost was allegedly $25,000.  The Arbitrator does not find that change order
12  supported by sufficient documentation.

13  Additional Crown Moldings

14  The evidence suggests that the Respondent hired Alegre Custom Cabinets ("Alegre") to
15  install additional crown moldings which allegedly delayed the Project.  This action by the
16  Respondent allegedly prevented the Claimant from completing the Project within a "reasonable
17  amount of time," because the Claimant could not perform any additional work while Alegre was
18  performing the installation of the additional crown moldings.  The evidence does not suggest that
19  this work by Alegre constituted a disruption to the work of Claimant, or that there could not have
20  been a work around of Alegre.

21  Marble Window Sills

22  The same applies to the Respondents hiring of Color Stone & Design ("Color Stone") to
23  supply and install marble window sills, which were not in the original Contract scope.

24  This work allegedly prevented the Claimant from completing the wood window casings.
25  Color Stone stopped work on the Project because they purportedly under quoted the cost for
26  performing the marble window sills, and could not afford to complete their work.

27  Much of the testimony summarized here is hotly contested, and there are different versions
28  applied to the circumstances by the parties.

1   Claimant Ceases Work Because Respondent Refused to Pay Claimant and Orders

2   Claimant to Cease Work

3        As was perhaps inevitably going to be the case, Respondent refused to pay the Claimant for

4   work it is performing.  On July 12, 2013, Claimant demanded that Respondent pay the outstanding

5   balance of $106,159.35.  The Respondent refused to pay and shortly thereafter, the Respondent

6   ordered Claimant not to perform any additional work without the Respondent's authorization.

7        On October 2, 2014, Claimant posted a 10 day stop work order and stopped work, because

8   of Respondents purported failure to pay Claimant certain monies due.

9                              **FINDINGS**

10   The Contract between Claimant and Respondent Was Fully Negotiated and is Integrated

11        The Respondent cannot argue that he did not have a chance to fully negotiate all of the

12   terms of the Contract.  Indeed, he and his brother had a full opportunity to negotiate the terms of

13   the Contract.  He made many changes of mind regarding the interior appointments, after he agreed

14   on a room by room basis as to the interior improvements.

15        I find that the Contract for the Project is an integrated fixed price agreement under

16   applicable law.  The Contract states at paragraph 20 that it "constitutes the entire understanding and

17   agreement between the parties".

18        Each page of the Contract was initialed by the parties.  In addition, the "BDI" contract was

19   fully negotiated and there is an integration clause in the BDI contract.

20        I find that the parole evidence rule bars modification of both contracts by way of testimony

21   from the Respondent, under these circumstances.  I agree with the arguments by the Claimant in his

22   briefing and at the Arbitration itself.  The Contract in question is a "fixed price lump sum"

23   agreement.

24        I find the testimony on this point of the Claimants' expert Mr. Ossman be hopeful.

25        I find that the Respondent was not permitted to "spend all the monies in finish line items on

26   material and labor".  I agree with the testimony of Mr. Ossman on this point alone, where he stated

27   that: "if there were any savings on any of the line items in the construction cost breakdown, those

28   savings were owed to" the Claimant and not to the Respondent.  This is because the Contract was a

1    fixed priced lump sum Contract. I find in favor of the Claimant and against the Respondent in

2    terms of interpretation of the Contract in any other matter than just stated.

3       The Respondent was Inappropriate in Obtaining Access to the Construction Payment

4       Records

5       I find that the Respondent was acting contrary to the terms of the BDI contract in obtaining

6    access to the payment records of BDI, and in attempting to negotiate payment requests from

7    Claimant to BDI. I find that this constituted somewhat of an interference with the draw process

8    administered by BDI. I find Mr. Murphy of BDI persuasive when he testified that the draw process

9    on this matter was the worst record that he had seen in his entire 50 year career. I also find that the

10    Respondent succeeded in requiring the Claimant to submit its entire pay request through the

11    Respondent for payment, contrary to the agreement of the parties. This was a situation that did not

12    reflect well on the credibility of the Respondent.

13       I Find that the Respondent Breached the Contract by Refusing to Pay the Claimant

14       For Work Which had been Performed, Including the Change Orders

15       I agree with the contention of the Claimant that the Respondent refused to pay the Claimant

16    for work which had been performed, including the change orders. I find no appropriate basis

17    therefore on the part of the Respondent. I find that the Respondent breached the Contract between

18    the parties, and that this breach was a substantial factor and cause of the damages asserted by the

19    Claimant in terms of unpaid Contract amount of $87,703.10.

20       I Do Not Find That the Claimant has Made Its Delay Case against the Respondent

21       There is a contention by the Claimant that the Respondent delayed the selection of

22    materials, often changed design elements and provided defective architectural plans. There is also

23    an allegation that the Respondent frequently hired trade contractors. There are Claimant

24    allegations that the alleged delays were caused by the Respondent. I do not find the testimony by

25    Mr. Ma during the Arbitration persuasive that the Respondent substantially delayed choices

26    relating to the Project's cabinetry, tile and finished carpentry, and that such caused the delay. Nor

27    do I find that these alleged delays are shown to result in delay damages, as articulated by the

28    Claimant. I do not find persuasive the testimony by the Claimant's delay expert, nor by the

1    Claimant to the effect that the Claimant suffered $70,000 in delay damages.  The causation and

2    delay damage evidence is not persuasive in the Arbitration record.

3        Mr. Ossman opined that the Respondent's failure to timely make material selections,

4    purport changes in design elements and providing defective plans, as well as direct hiring of trade

5    contractors, "all substantially delayed the completion of work by" Claimant.  These are

6    conclusionary statements to the effect that said conduct purportedly <u>caused</u> substantial delays.

7        I do not find persuasive the Ossman testimony that the Claimant was delayed a total of 14

8    months, due to the Respondent's actions.  The unsupported contention that Mr. Ossman valued the

9    Claimant's expended overhead costs at $70,000 is not persuasive.

10        I have carefully studied Exhibits 348, 3498, 350 and 351.  I do not find those exhibits and

11    the related testimony from Mr. Ossman persuasive.  I do not find that the said evidence supports an

12    award of $70,000 in delay damages, or any delay damages.  The Arbitrator is mindful of

13    Respondents following discussed delay claim.

14        The Arbitrator finds, under all the circumstances, that there is a overriding level of

15    concurrency on the competing delay damage claims, and that the Arbitrator finds it appropriate to

16    make <u>no delay damage award to either party</u>, under all of the circumstances.  That is what the

17    evidence and circumstances require, after the Arbitrator reviewed all of the evidence here.  Neither

18    side did the requisite delay workup as to the dailies.

19        Accordingly, the Arbitrator makes no delay damage award to either party under the

20    circumstances.

21    <u>Respondent's Delay Damages Claim</u>

22        Respondent asserts entitlement to "delay damages" of $63,827 under Article II of the

23    Contract; pursuant to a clause named "Construction Termination Data and Penalty Clause".  This is

24    a Contract drafted initially by the Claimant, though it was much negotiated by Claimant and

25    Respondent.

26        Claimant makes a questionable argument that the "penalty" clause is somehow legally

27    impermissible, though his client negotiated that clause, based on a Contract form that the <u>Claimant</u>,

28    itself, drafted.  The claim that the "penalty clause" somehow violates California law regarding

1   liquidated damages turns the world somewhat upside down.  Really?  Citation of California

2   Authority under the <u>El Centro</u> case is not helpful.

3   This is not a concept the Arbitrator is prepared to accept, and is not to the Arbitrator's

4   understanding of the law.  The argument that the Respondent claims additional days to complete

5   construction of 859 days is much "exaggerated" and not persuasive.

6   It is the Arbitrator's view that <u>both sides</u>, and their experts, engage in a strained

7   understanding of the underlying facts.  If there was ever a case that was ready made for a finding of

8   concurrency as to delay claims, <u>it is this case</u>.

9   There is no "penalty" buried within the Contract documentation here, particularly as to a

10   liquidated damages clause calling for $2,500 for liquidated damages or $83.00 per day liquidated

11   damages.  That just will not move the needle in a post millennium circumstance.

12   Respondent provides no delay damage calculation.  There is no basis for a $63,827 delay

13   award (<u>or any</u> delay award to Respondent, under these circumstances, with reference to 859 days of

14   purported delay to Respondent).

15   <u>The Claimant is Not Responsible for Design Defects in the Architectural Plans</u>

16   In a somewhat creative argument, the Respondent attempts to place at the feet of the

17   Claimant defects in the architect design with reference to the stairway.  The Respondent argues that

18   delays associated with the stairway design are deficiencies which should be visited upon the

19   Claimant, based upon the Claimant's alleged failure to question certain dimensions in the

20   architectural drawings, <u>before</u> the Claimant started work.  This has to do with the Respondent's

21   interpretation of Notes 2, 6, and 22 of the architectural plans.

22   The Claimant's expert, Melton, testified that the Respondent's interpretation of these Notes

23   2, 6, and 22 makes no reference to the Claimant, providing a "guarantee" for the architect's design,

24   nor do the Notes provide an obligation for the Claimant to catch design defects.  Rather, the Notes

25   state that the contractor has the obligation to verify dimensions and conditions, as is typical in the

26   industry.

27   The Arbitrator finds persuasive the testimony of Mr. Melton to the effect that verifications

28   of dimensions is for the purpose of insuring that there will be sufficient space to build, not for

1  catching architect design defects, which contractors are not trained to do.  The Melton testimony

2  persuaded the Arbitrator that the Claimant satisfied it obligation to verify dimensions of the

3  stairwell.

4      The Respondent, in the Arbitrator's view, not Claimant, is responsible for his architect's

5  stairway design deficiencies, because Respondent impliedly warranted that the plans were free

6  from defect, and that the building could be constructed from the plans.  The burden of design

7  defects by the Respondent's architect rests upon the Respondent, <u>not the Claimant</u>.

8      <u>The Claimant Satisfied Its Obligation to Secure the Job Site</u>

9      The Claimant, under the evidence, satisfied its obligation to secure the job site by providing

10  a chain link fence around the Project, <u>and</u> by providing locks, on all the doors of the subject home.

11  The Claimant also changed the locks on the chain link fence several times.  The testimony of Mr.

12  Garcia and of the Claimant confirmed that the locks were changed several times.

13      While there were break-ins, those break-ins are not the fault of the Claimant.  The Claimant

14  did inform the Respondent that a temporary alarm system could be purchased, if the Respondent

15  wanted to pay the extra cost associated with the temporary alarm system.  The Respondent declined

16  to pay for a temporary alarm system.  The Respondent made his choices.

17      The burglaries in question occurred on September 25, 2013 and December 6, 2013, <u>after</u>

18  counsel for the Respondent demanded that Claimant not perform any additional work at the

19  Project.

20      The evidence suggests that the Claimant took reasonable steps to secure the Project <u>while</u>

21  <u>the Claimant was working at the Project</u>.

22      <u>The Contract Excludes Claimant Responsibility for Public Utility Work</u>

23      Page 4 of the Construction Cost Breakdown within the <u>Contract</u>, <u>excludes</u> responsibility for

24  any public utilities work.

25      <u>Oval Flex Crown Molding Measurement is Not the Responsibility of Claimant</u>

26      Change Order No. 2, signed by the parties, only obligated Claimant to install the crown

27  molding at the five recessed ceilings.  Point 5 in the Change Order No. 2 calls for molding

28

1  installation labor for five new added recessed ceilings based on revised plans dated February 14,

2  2011.  The ninth section of Change Order No. 2 states:

3       "This change order amount is <u>not</u> including . . . the moldings and

4       materials for five new added recessed ceiling areas . . . "

5       The evidence suggests that <u>supply of the crown molding</u> for the five recessed ceilings was

6  the <u>obligation of the Respondent</u>, including the <u>oval flex crown molding</u> for the entertainment room

7  recessed ceiling.  Supply of the measurements for the molding and actually ordering the molding

8  was the Respondent's obligation under the evidence.  The construction notes requiring Claimant to

9  verify the conditions were inapplicable, under the evidence, to the oval flex crown molding.

10       Respondent hired Mr. Garcia to manufacture and install additional quantities of crown

11  molding throughout the home.  This may have contributed to delay of the Claimant's completion of

12  the Project to some extent.  The evidence is not clear.  Mr. Ma testified that Claimant was unable to

13  finish the painting, tile and other finish trades to some extent.  This is allegedly because Mr. Garcia

14  was still installing crown molding, wood canopies and wood columns, in addition to certain other

15  finished carpentry items.  The requisite delay workup based on daily record was not done, so the

16  requisite proof was not provided.

17       The evidence suggests that the crown molding and finish carpentry work in this regard was

18  not the responsibility of the Claimant.

19       <u>Exterior Molding Delays</u>

20       There was a dispute at the Arbitration as to responsibility for the exterior stucco and the

21  foam moldings. That is as to the one-half inch thickness.  The Project plans and Contract did not

22  state that the foam moldings should be one-half inch thick.  Mr. Ma testified that the one-half inch

23  stucco on foam moldings was <u>not the standard in the industry</u>.  Goodyear, the initial stucco

24  contractor, walked off the job because Respondent would not release an $8,000 progress payment

25  to Goodyear, unless it installed stucco at one-half inch thickness on the exterior foam moldings.  A

26  second stucco contractor, E Plastering, was hired to finish the stucco work.  Once E Plastering was

27  hired, Respondent continued withholding payments for the stucco work.  There is much dispute as

28  to the extent of what Respondent knew about the amounts being made to E Plastering and

1 Goodyear, because of it obtaining information from BDI contrary to the Contract between BDI,

2 Respondent and Claimant.

3      Much time was spent at the Arbitration as to characterization of the motives of Respondent

4 and Claimant concerning the payments to subcontractors, including E Plastering. The evidence

5 suggests that Respondent withheld payments from Claimant and the stucco subcontractors.

6 Claimant argues that this was all a part of Respondent's attempt to secure "free construction."

7     Each of the Claimant's Change Orders are Valid and Enforceable

8      I find persuasive the testimony of Mr. Ossman and Claimant's principal Mr. Ma as to the

9 change orders. The change orders by Claimant are enforceable, and Claimant is owed a total of

10 $87,703.10 for Contract and extra work. The Respondent has not disputed that the work covered

11 by Change Order Nos. 3 – 20 was performed. Change Order Nos. 3 – 20 are valid and enforceable

12 against Respondent.

13     Respondent's Loss of Rental Claim

14      While the Arbitrator does not conclude that the Respondent has established a basis for a

15 loss of rental claim in the amount of $22,500, there is a basis to conclude that the Claimant could

16 have better coordinated and managed the timing of the demolition of the rental property at the

17 Project. The Arbitrator concludes, after reviewing all of the evidence, that the Claimant did not

18 properly administer this Project from a number of standpoints.

19      If the Claimant had done a better job of managing this Project, a lot of its delay difficulties

20 could have been avoided.

21      True, the Respondent was somewhat predatory, and was deliberately opaque in his

22 understanding of the construction contracting circumstances. 'The situation was not aided by the

23 Respondent's brother, who meddled and gave bad advice to his brother on almost every occasion,

24 thus misapplying his partial construction knowledge.

25      It is the Arbitrator's conclusion that the Claimant could have done a better job of

26 coordinating the rental unit tear down under the Contract. The Arbitrator's understanding of

27 Article II of the Contract is to the effect that Claimant was to timely advise Respondent about the

28 tenant move out.

-17-

FINAL AWARD

1    This provision suggested that there was to be effective coordination with the Respondent so

2    that the move out of the tenant would be required only when necessary.  The electrical line, true

3    enough, needed to be installed, but not at the expense of rental income for the Respondent.  It is the

4    Arbitrator's conclusion that the Respondent has, to <u>some limited extent</u>, met his evidentiary burden

5    to prove that he has been <u>somewhat damaged</u> with reference to the loss of rental for perhaps <u>three</u>

6    <u>months of lost rentals</u> in the total amount of $4,500 total, given a $1,500 per month rental.  That is

7    the Arbitrator's findings.

8    <u>Respondent Has Not Established a Basis for an Award of Alleged Cost to Complete</u>

9    <u>Damages by Claimant</u>

10    The Claimant argues that the measure of damages for breach of Contract to construct

11    improvements on real property (where the work is to be done on Respondent's property) is the

12    reasonable cost to the Respondent to finish the work in accordance with the Contract.

13    Here, the remaining construction Contract balance is $178,080.  Thus, the Respondent has

14    not paid $178,080 to Claimant.  The Claimant argued that it will cost $178,080 in order to complete

15    construction and argues that the Claimant should pay Respondent that amount.

16    If it were true that it would cost $178,080 to complete, the Respondent would have zero

17    damages because there remains a Contract balance of $178,080.

18    Respondent argues that he is entitled to receive that money.

19    The Respondent argues that he is entitled $178,080 "for free" according to Claimant.

20    The Arbitrator agrees that this is not a proper position on Respondents part under California

21    law.

22    The Arbitrator finds that the Respondent has failed to prove that the Claimant breached the

23    underlying Contract here.  In order to be liable for damages at all, the Claimant must be shown to

24    have breached legal obligations owed to Respondent.  The Arbitrator has not made such a finding.

25    The Respondent has presented no evidence that Claimant refused to perform work or that the

26    Claimant performed defective construction.  The Arbitrator finds that Respondent ordered Claimant

27    to stop work on the Project.

28

-18-

FINAL AWARD

Aside from the flaws in Respondent's cost to complete argument, Claimant is not liable to Respondent for any costs to complete damages. This part of Respondent's claim must fail.

## NET BASE AWARD

The Arbitrator hereby awards to Claimant the sum of $87.703.10, less $4,500 (for lost rentals), for a total of $83,203.10 as the total net award to Claimant against Respondent, subject to further proceedings and deliberations regarding interest, costs, and attorney's fees, to the extent such are appropriate.

<u>The Arbitrator Designated the Claimant the Prevailing Party Herein for Purposes</u>

<u>Of the Arbitrator Making Findings Regarding Matters of Cost, Interest and Attorney's Fees</u>

The Arbitrator finds that the total costs requested by Claimant of $81,853.22 (less $2,500 for expert fees) is appropriate, for a total of $79,353.22. That is the cost award to Claimant. There is no basis to disallow any cost other than the aforementioned expert costs. The JAMS costs, Reporter fees and language select fees, plus miscellaneous costs, are all proper, less the said expert costs.

<u>Expert Fees</u>

The Arbitrator finds little <u>specific</u> contractual and legal basis for the award of expert fees here. Normally, the Arbitrator expects the contract between the parties to unequivocally call for the award of expert fees to the prevailing party in so many words. There is no such language here. The parties could have put that language in their contract. However, here the Respondent was on again off again about his defect action, which was expert intensive. Under all the circumstances, the Arbitrator awards Claimant $25,000.00 of his incurred expert fees in this case, in the exercise of the Arbitrator's discretion.

<u>Interest</u>

The Arbitrator awards the full amount of the requested interest to Claimant of $10,805.51.

-19-
FINAL AWARD

**Attorney's Fees**

The Arbitrator has considered ALL of the arguments raised in the papers by the parties on the attorneys fee issue, including as to the $148,977.00 of fees incurred through the Arbitration, the bankruptcy issues and delay question, the lien issues, alleged fee duplication issue, the effect of the interim effect of the settlement offer, and other contextual issues. The Arbitrator, thus, awards Claimant, as the prevailing party, $178,500.00 as the attorneys fee award in this case.

**Total Fee, Cost, and Interest Award to Claimant**

The Arbitrator, therefore, makes the total award of $293,658.73 for fees, cost and interest to Claimant against Respondent.

**TOTAL FINAL AWARD**

Adding the total Net Base Award of $83,203.10 to this fees, costs and interest award of $293,658.73, results in a total Final Award to Claimant of $376,861.83 to Claimant against Respondent.

Dated: May 4, 2015                      By: _____
                                             GEORGE D. CALKINS, II, Esq.
                                             Arbitrator

**PROOF OF SERVICE BY EMAIL & U.S. MAIL**

Re: Reliable Design and Construction, Inc. vs. Chau, Jimmy
Reference No. 1220046673

I, JENNY LEE, not a party to the within action, hereby declare that on  May 04, 2015 I served the

attached FINAL AWARD on the parties in the within action by Email and by depositing true copies thereof

enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at Santa Monica,

CALIFORNIA, addressed as follows:

Aaron Flores Esq.
Richard Mah Esq.
Hunt, Ortmann, et al.
301 North Lake Ave.
7th Floor
Pasadena, CA  91101-1807
Phone: 626-440-5200
flores@huntortmann.com
mah@huntortmann.com
 Parties Represented:
 Reliable Design and Construction, Inc.

Ms. Bhupinder K. Malik
L/O Edward C. Ip, & Assoc.
4424 Santa Anita Ave.
Suite 201
El Monte, CA  91731
Phone: 626-228-0638
malik@lawyer4property.com
 Parties Represented:
 Jimmy Chau

I declare under penalty of perjury the foregoing to be true and correct. Executed at Santa Monica,

CALIFORNIA on  May 04, 2015.


JENNY LEE
jlee@jamsadr.com

# ATTACHMENT C

1 | Richard Mah, Esq., SBN 149148
Aaron J. Flores, Esq., SBN 268279
2 | John L. Jones II, Esq., SBN 225411
HUNT ORTMANN PALFFY
3 | NIEVES DARLING & MAH, INC.
301 North Lake Avenue, 7th Floor
4 | Pasadena, California 91101-1807
Phone: (626) 440-5200    Fax: (626) 796-0107
5
Attorneys for Reliable Design and Construction
6 | Inc.

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11 | In re                                   Case No. 2:15-BK-10239-SK

12 | HUE CHAU AKA JIMMY CHAU,                 Chapter 13

13 |          Debtor.

14 |                                         **NOTICE OF PERFECTION OF
MECHANIC'S LIEN PURSUANT TO 11**
15 |                                         **U.S.C. §§ 546(b) AND 362(b)(3); DEMAND
FOR COMPLIANCE WITH 11 U.S.C. §**
16 |                                         **363**

17 |                                         [No Hearing Required]

*(left margin, vertical text)* HUNT ORTMANN PALFFY NIEVES DARLING & MAH, INC. 301 NORTH LAKE AVENUE, 7TH FLOOR PASADENA, CALIFORNIA 91101-1807 Tel (626) 440-5200 • Fax (626) 796-0107

**TO THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, THE DEBTOR, ALL PARTIES IN INTEREST AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 11 U.S.C. §546(b), Reliable Design and Construction Inc. ("Reliable"), a creditor of the Debtor herein, hereby perfects its mechanic's lien on real property owned by the Debtor located at 14146 Benbow Street, Baldwin Park, CA 91706 and/or which is described as follows: Assessor's Parcel No.: 8543-012-022; Tract No. 16441; Lots 12 and 13 (the "Property").  The mechanic's lien was recorded in the County of Los Angeles Recorder's Office as Document No. 20140078901.  The mechanic's lien is in the amount of $157,703.10 for labor and materials on the construction of a single family residence at the Property.  A true and correct copy of the mechanic's lien is attached hereto as Exhibit "A".  A true and correct copy of the Notice of Extension of Time to Foreclose Lien (the "Extension Notice"), which extended the deadline for Reliable to foreclose on the mechanic's lien, is attached hereto as Exhibit "B".  The Extension Notice was recorded in the County of Los Angeles Recorder's Office as Document No. 20140411760.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to 11 U.S.C. §546(b), Reliable hereby provides notice to the Debtor, as the purported owner of the Property mentioned in the mechanic's lien, that notwithstanding the automatic stay of 11 U.S.C. §362, Reliable hereby perfects its claim to foreclose its mechanic's lien, as may be required by Section 3144(b) of the California Civil Code.  Accordingly, in light of this notice, the Debtor and other parties-in-interest are hereby estopped from claiming that any lawsuit to foreclose Reliable's mechanic's lien was not timely commenced pursuant to Section 3144(b) of the California Civil Code.

**PLEASE TAKE FURTHER NOTICE** that, additionally, the Debtor is hereby notified of Reliable's perfection of its interest in the Property pursuant to 11 U.S.C. §546(b) and 362(b)(3) and in lieu of seizure of any property or commencement of an action to whatever extent such seizure or commencement may be necessary in order to accomplish a perfection of Reliable's interest in any property.  This notice does not constitute, and this record of notice does not constitute, an admission as to the necessity of any such seizure or commencement.

683185.1 JJ 3427.003

2

NOTICE OF PERFECTION OF MECHANIC'S LIEN PURSUANT TO
11 U.S.C. §§ 546(b) AND 362(b)(3); DEMAND FOR COMPLIANCE WITH 11 U.S.C. § 363

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

**PLEASE TAKE FURTHER NOTICE** that Reliable claims all rents, issues, profits or other monies are generated by the underlying real property, including, without limitation, refunds of deposits with governmental agencies or monies received as a result of a condemnation proceeding, and proceeds thereof, to be the cash collateral of Reliable and may not be used by the Debtor for any purpose without the consent of Reliable. Reliable also hereby makes demand for full compliance by the Debtor with the requirements of 11 U.S.C. §363 regarding the segregation, accounting and prohibition of use of all of Reliable's cash collateral.

DATED: January 23, 2015

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.


By: _____/s/ John L. Jones II_____
        JOHN L. JONES II
Attorneys for Reliable Design and Construction Inc.

HUNT ORTMANN PALFFY
NIEVES DARLING & MAH, INC.
301 NORTH LAKE AVENUE, 7TH FLOOR
PASADENA, CALIFORNIA 91101-1807
Tel (626) 440-5200 • Fax (626) 796-0107

683185.1 JJ 3427.003

3

NOTICE OF PERFECTION OF MECHANIC'S LIEN PURSUANT TO
11 U.S.C. §§ 546(b) AND 362(b)(3); DEMAND FOR COMPLIANCE WITH 11 U.S.C. § 363

**EXHIBIT A**

COPY

**RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:**

Aaron J. Flores, Esq.
Hunt Ortmann Palffy Nieves
Darling & Mah, Inc.
301 N. Lake Avenue, 7th Floor
Pasadena, CA 91101



01/23/2014

*20140078901*

Original will be returned when
processing has been completed.
LOS ANGELES COUNTY REGISTRAR - RECORDER

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## MECHANIC'S LIEN

Reliable Design and Construction, Inc. ("Reliable Design"), located at 10904 Grand Avenue, Temple City, California 91780, hereby claims a mechanic's lien in the amount of $157,703.10 on the construction of a single family residence and on the real property on which it is located at 14146 Benbow Street, Baldwin Park, CA 91706 and/or which is described as follows: Parcel: 8543-012-022; Tract No. 16441; Lots 12 and 13. The lien claimant reserves the right to amend this lien when more information is provided. The Owner of the real property is Jimmy Chau. Reliable Design furnished labor, services, materials and equipment to the real property owner, Jimmy Chau. Said labor, services, materials and equipment includes the construction of a new single family residence.

Dated: January 22, 2014

Name of Claimant:   RELIABLE DESIGN AND
CONSTRUCTION, INC.

By: _Aaron J. Flores_

Its: _Attorney in Fact_

Jimmy Chau
14146 Benbow Street
Baldwin Park, CA. 91706

## VERIFICATION

I am the agent authorized to make this verification on behalf of Reliable Design and Construction. This mechanic's lien is true of my own knowledge, except for those matters stated on my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 22, 2014

_____
Aaron J. Flores, Attorney in Fact

**Notice of Mechanic's Lien and Proof of Service Affidavit Follow on Next Page**

602351.1 AJF 3427.003

## NOTICE OF MECHANIC'S LIEN

### ATTENTION!

**Upon the recording of the enclosed MECHANIC'S LIEN with the county recorder's office of the county where the property is located, your property is subject to the filing of a legal action seeking a court-ordered foreclosure sale of the real property on which the lien has been recorded. That legal action must be filed with the court no later than 90 days after the date the mechanic's lien is recorded.**

**The party identified in the mechanic's lien may have provided labor or materials for improvements to your property and may not have been paid for these items. You are receiving this notice because it is a required step in filing a mechanic's lien foreclosure action against your property. The foreclosure action will seek a sale of your property in order to pay for unpaid labor, materials, or improvements provided to your property. This may affect your ability to borrow against, refinance, or sell the property until the mechanic's lien is released.**

**BECAUSE THE LIEN AFFECTS YOUR PROPERTY, YOU MAY WISH TO SPEAK WITH YOUR CONTRACTOR IMMEDIATELY, OR CONTACT AN ATTORNEY, OR FOR MORE INFORMATION ON MECHANIC'S LIENS GO TO THE CONTRACTORS' STATE LICENSE BOARD WEB SITE AT www.cslb.ca.gov.**

### PROOF OF SERVICE AFFIDAVIT

I, Shirley K. Stickley, served this Mechanic's Lien and Notice of Mechanic's Lien on Respondent Jimmy Chau. Service was made on January 22, 2014, by certified mail, return receipt requested, postage prepaid, addressed to Jimmy Chau, located at 100 South Mockingbird Lane, West Covina, CA 91791.

I certify or declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2014, at Pasadena, California.

_____
Shirley K. Stickley

**EXHIBIT B**



COPY

**RECORDING REQUESTED BY:**

Richard Mah, Esq.

**WHEN RECORDED MAIL TO:**

Richard Mah, Esq.
Hunt Ortmann Palffy Nieves Darling
    & Mah, Inc.
301 North Lake Avenue
Seventh Floor
Pasadena, California 91101-1807



04/22/2014

COPY

*20140411760*

Has not been compared with original.
Original will be returned when
processing has been completed.
LOS ANGELES COUNTY REGISTRAR - RECORDER

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# NOTICE OF EXTENSION OF TIME TO FORECLOSE LIEN

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:

Richard Mah, Esq.
Hunt Ortmann Palffy Nieves Lubka
Darling & Mah, Inc.
301 North Lake Avenue, 7th Floor
Pasadena, California  91101-1807

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF EXTENSION OF TIME TO FORECLOSE LIEN

WHEREAS, Reliable Design and Construction, Inc. did on the 23rd day of January 2014 of record a Mechanic's Lien in the Office of the County Recorder of Los Angeles County, State of California as Document No. 20140078901 against certain real property located in the County of Los Angeles, State of California, 14146 Benbow Street, Baldwin Park, CA 91706 and/or which is described as follows: Parcel: 8543-012-022; Tract No. 16441; Lots 12 and 13, for the sum of $157,703.10; and WHEREAS, the last day to file suit to foreclose on the lien is April 23, 2014.

NOW, THEREFORE, it is agreed by and between the said Owner, Jimmy Chau, whose name is signed hereto, and the said Claimant that the deadline to file suit to foreclose on the lien is hereby tolled until through and including April 23, 2015, and said Owner waives any and all right to object to the maintenance of any action brought to foreclose said lien which may hereafter be brought within the period hereinabove mentioned and waives any right to object to the maintenance of such suit to foreclose on the ground that it is barred by any statute of limitations whatsoever, provided that suit to foreclose is brought within the time provided in this agreement. Notwithstanding the foregoing, nothing in this Notice of Extension of Time to Foreclose Lien shall be construed as an agreement that any amount is due the Claimant on said lien, and the Owner reserves all other defenses that the Owner could have asserted regarding the mechanic's lien.

IN WITNESS WHEREOF, Jimmy Chau and Reliable Design and Construction, Inc. execute this agreement in the manner required by law.

Claimant:  Reliable Design and Construction, Inc.

By: _John L. Ma_

Name: _John Li Ma_

Title: _President_

Date: _04/22/2014_

Owner:  Jimmy Chau

By: _Jimmy Chau_

Name: _JIMMY CHAU_

Title: _OWNER_

Date: _04/22/2014_

623566.1 RM 3427.003

BRUCE V. SH
Commission #
Notary Public -
Los Angeles C
My Comm. Expires

STATE OF CALIFORNIA               )

                                          )

COUNTY OF LOS ANGELES         )

On _April 22, 2014_____, before me, _Michelle Perez-Consuegra_, a Notary Public, personally appeared _John Li Ma_____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

MICHELLE PEREZ-CONSUEGRA
Commission # 1937746
Notary Public - California
Los Angeles County
My Comm. Expires May 22, 2015

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _Los Angeles_

On _4/22/14_ before me, _Bruce V Sharp Notary Public_,
(Here insert name and title of the officer)

personally appeared _Jimmy Chan_,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

Signature of Notary Public

(Notary Seal)

BRUCE V. SHARP
Commission # 2013040
Notary Public - California
Los Angeles County
My Comm. Expires Mar 17, 2017

◆━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━◆

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual (s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM

_Any acknowledgment completed in California must contain verbiage exactly as
appears above in the notary section or a separate acknowledgment form must be
properly completed and attached to that document. The only exception is if a
document is to be recorded outside of California. In such instances, any alternative
acknowledgment verbiage as may be printed on such a document so long as the
verbiage does not require the notary to do something that is illegal for a notary in
California (i.e. certifying the authorized capacity of the signer). Please check the
document carefully for proper notarial wording and attach this form if required._

- State and County information must be the State and County where the document
  signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which
  must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her
  commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of
  notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e.
  he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this
  information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible.
  Impression must not cover text or lines. If seal impression smudges, re-seal if a
  sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of
  the county clerk.
  ❖ Additional information is not required but could help to ensure this
    acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a
    corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

301 North Lake Avenue, 7th Floor, Pasadena, California  91101-1807

A true and correct copy of the foregoing document entitled (*specify*):   Notice of Perfection of Mechanic's Lien Pursuant to
11 U.S.C. §§ 546(b) and 362(b)(3); Demand for Compliance with 11 U.S.C. § 363
_____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 01/23/2015  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  01/23/2015  , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  01/23/2015  , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Hon. Sandra R. Klein
United Bankruptcy Court - Central District of California
255 East Temple Street, Suite 1582
Los Angeles 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/23/2015 | Vanessa Hobdy | /s/ Vanessa Hobdy |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## ADDITIONAL SERVICE INFORMATION:

**By NEF**

CHAPTER 13 TRUSTEE: Kathy A. Dockery (TR) - efiling@CH13LA.com

OFFICE OF THE U.S. TRUSTEE:
United States Trustee (LA) - ustpregion16.1a.ecf@usdoj.gov

ATTORNEY FOR DEBTOR: M Wayne Tucker - tucker@waynetuckerlaw.com

ATTORNEY FOR JP MORGAN CHASE BANK: Merdaud Jafarnia - bknotice@mccarthyholthus.com

**By U.S. Mail**

ATTORNEY FOR DEBTOR:
M Wayne Tucker
Orrock Popka Fortino Tucker & Dolen
1533 Spruce St Ste 100
Riverside, CA 92507

OFFICE OF THE U.S. TRUSTEE:
United States Trustee (LA)
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

CHAPTER 13 TRUSTEE:
Kathy A. Dockery
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017

--
Chase
P.O. Box 15298
Wilmington, DE 19850

Chase Mtg
P.O. Box 24696
Columbus, OH 43224

Fifth Third Bank
Bankruptcy Department
1830 E. Paris Ave. Se
Grand Rapids, MI 49546

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**EXHIBIT F**

CONTINUATION SHEET

Special Form - 2. APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amount are stated to the nearest dollar.
Use Column K on Contracts where variable retainage for line items may apply.

SPECIAL FORM - 3

PROJECT NAME: BENSOW
BID'S FOR NO: 50-3889

APPLICATION NO: 113-140283
APPLICATION DATE: 05/24/13
PERIOD TO: 05/24/13
ARCHITECT'S PROJECT NUMBER:

Page 1 of 2

| ITEM NO | X REF | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION (CO+REV) | CHANGE ORDER (C.O.) | REVISIONS (REV.) | CURRENT BUDGET | WORK COMPLETED THIS PERIOD FROM PREVIOUS APPLICATION | MATERIALS PRESENTLY STORED (NOT IN C OR H) | TOTAL COMPLETED AND STORED TO DATE | % | BALANCE TO FINISH | TOTAL RETAINAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B2021 | 0 | CURB/GUTTER/WALK/SD | 9,500.00 | 0.00 | 0.00 | | 9,500.00 | 0.00 | | 0.00 | 0.00% | 9,500.00 | Bill at 95% Complete |
| B2002 | 0 | CONCRETE PAVING | 9,500.00 | 0.00 | 0.00 | | 9,500.00 | 0.00 | | 0.00 | 0.00% | 9,500.00 | Bill at 95% Complete |
| B2010 | 0 | GRADING | 5,000.00 | 0.00 | 0.00 | | 5,000.00 | 4,000.00 | | 4,000.00 | 80.00% | 1,000.00 | Bill at 95% Complete |
| B2014 | 0 | DEMOLITION | 15,000.00 | 0.00 | 0.00 | | 15,000.00 | 15,000.00 | | 15,000.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B2018 | 0 | FOUNDATIONS/SLAB | 25,000.00 | 0.00 | 0.00 | | 25,000.00 | 0.00 | | 0.00 | 0.00% | 25,000.00 | Bill at 95% Complete |
| B3030 | 0 | MASONRY | 5,000.00 | 0.00 | 0.00 | | 5,000.00 | 0.00 | | 0.00 | 0.00% | 5,000.00 | Bill at 95% Complete |
| B3036 | 0 | FIREPLACE & VENT | 3,500.00 | 0.00 | 0.00 | | 3,500.00 | 2,000.00 | | 2,000.00 | 57.14% | 1,500.00 | Bill at 95% Complete |
| B3038 | 0 | VENEER - OTHER | 25,000.00 | 0.00 | 0.00 | | 25,000.00 | 9,500.00 | | 9,500.00 | 37.14% | 15,500.00 | Bill at 95% Complete |
| B3040 | 0 | LUMBER-ROUGH | 32,000.00 | 0.00 | 0.00 | | 32,000.00 | 36,566.61 | | 36,566.61 | 114.35% | (4,566.61) | Bill at 95% Complete |
| B3042 | 0 | LUMBER-FINISH | 5,000.00 | 0.00 | 0.00 | | 5,000.00 | 413.39 | | 413.39 | 8.27% | 4,586.61 | Bill at 95% Complete |
| B3046 | 0 | CARPENTRY-ROUGH | 35,000.00 | 8,500.00 | 0.00 | | 43,500.00 | 43,500.00 | | 43,500.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B3048 | 0 | CARPENTRY-FINISH | 7,000.00 | 2,500.00 | 0.00 | | 9,500.00 | 8,199.80 | | 8,199.65 | 91.10% | 800.35 | Bill at 95% Complete |
| B3052 | 0 | HARDWARE-ROUGH | 6,000.00 | 0.00 | 0.00 | | 6,000.00 | 5,180.00 | | 5,180.00 | 86.33% | 820.00 | Bill at 95% Complete |
| B3054 | 0 | HARDWARE-FINISH | 2,000.00 | 0.00 | 0.00 | | 2,000.00 | 828.99 | | 828.98 | 41.44% | 1,171.01 | Bill at 95% Complete |
| B3042 | 0 | ROOF COVERING | 15,000.00 | 0.00 | 0.00 | | 15,000.00 | 10,021.50 | | 10,021.50 | 66.81% | 4,978.50 | Bill at 95% Complete |
| B3053 | 0 | SHEET METAL | 3,000.00 | 0.00 | 0.00 | | 3,000.00 | 2,500.00 | | 2,500.00 | 83.33% | 500.00 | Bill at 95% Complete |
| B3065 | 0 | WATERPROOFING | 4,500.00 | 0.00 | 0.00 | | 4,500.00 | 3,750.00 | | 3,750.00 | 83.33% | 750.00 | Bill at 95% Complete |
| B3066 | 0 | INSULATION | 5,000.00 | 0.00 | 0.00 | | 5,000.00 | 5,000.00 | | 5,000.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B3063 | 0 | GLASS & GLAZING | 1,500.00 | 0.00 | 0.00 | | 1,500.00 | 2,409.02 | | 2,409.02 | 160.75% | (909.02) | Bill at 95% Complete |
| B3070 | 0 | WINDOWS & SASH | 8,000.00 | 0.00 | 0.00 | | 8,000.00 | 8,460.33 | | 8,460.33 | 105.75% | (460.33) | Bill at 95% Complete |
| B3072 | 0 | SLIDING GLASS DO | 3,000.00 | 0.00 | 0.00 | | 3,000.00 | 3,000.00 | | 3,000.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B3079 | 0 | SKYLIGHT | 1,500.00 | 0.00 | 0.00 | | 1,500.00 | 0.00 | | 0.00 | 0.00% | 1,500.00 | Bill at 95% Complete |
| B3079 | 0 | GARAGE DOORS | 3,600.00 | 0.00 | 0.00 | | 3,600.00 | 4,500.00 | | 4,500.00 | 90.00% | 500.00 | Bill at 95% Complete |
| B3080 | 0 | LATH & PLASTER | 20,000.00 | 0.00 | 0.00 | | 20,000.00 | 1,000.00 | | 1,000.00 | 38.23% | 2,800.00 | Bill at 95% Complete |
| B3082 | 0 | DRYWALL | 16,000.00 | 1,000.00 | 0.00 | | 17,000.00 | 16,040.00 | | 19,100.00 | 95.50% | 960.00 | Bill at 95% Complete |
| B3083 | 0 | STUCCO & FRAMES | 7,000.00 | 0.00 | 0.00 | | 7,000.00 | 16,677.32 | | 16,677.32 | 95.30% | 322.68 | Bill at 95% Complete |
| B3092 | 0 | CABINETS | 10,000.00 | 0.00 | 0.00 | | 10,000.00 | 7,000.00 | | 7,003.00 | 70.03% | 3,000.00 | Bill at 95% Complete |
| B3099 | 0 | TILE - CERAMIC | 11,000.00 | 0.00 | 0.00 | | 11,000.00 | 4,000.00 | | 4,500.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B3104 | 0 | BATHROOM ACCESSO | 800.00 | 0.00 | 0.00 | | 800.00 | 7,000.00 | | 9,500.00 | 86.36% | 1,500.00 | Bill at 95% Complete |
| B3110 | 0 | SHOWER DOORS/ TU | 10,000.00 | 0.00 | 0.00 | | 10,000.00 | 7,000.00 | | 7,000.00 | 70.00% | 3,000.00 | Bill at 95% Complete |
| B3112 | 0 | PLUMBING-ROUGH | 3,000.00 | 0.00 | 0.00 | | 3,000.00 | 0.00 | | 0.00 | 0.00% | 800.00 | Bill at 95% Complete |
| B3120 | 0 | PLUMBING-FINISH | 20,000.00 | 0.00 | 0.00 | | 5,000.00 | 5,000.00 | | 5,000.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B3121 | 0 | ELECTRICAL-ROUGH | 18,000.00 | 0.00 | 0.00 | | 20,000.00 | 15,000.00 | | 15,000.00 | 75.00% | 5,000.00 | Bill at 95% Complete |
| B3118 | 0 | ELECTRICAL-FINIS | 4,000.00 | 2,100.00 | 0.00 | | 28,100.00 | 5,123.23 | | 5,123.23 | 55.09% | 4,176.77 | Bill at 95% Complete |
| B3131 | 0 | HEATING/AIR COND | 1,000.00 | 0.00 | 0.00 | | 4,000.00 | 0.00 | | 15,800.00 | 78.81% | 4,500.00 | Bill at 95% Complete |
| B3531 | 0 | SECURITY SYSTEM | 1,000.00 | 0.00 | 0.00 | | 1,000.00 | 1,000.00 | | 1,000.00 | 100.00% | 0.00 | Bill at 95% Complete |
| B3140 | 0 | SHEET METAL | 13,500.00 | 0.00 | 0.00 | | 13,500.00 | 1,000.00 | | 1,000.00 | 44.50% | 6,000.00 | Bill at 95% Complete |
| B3143 | 0 | FLOORING | 16,000.00 | 0.00 | 0.00 | | 16,000.00 | 10,125.00 | | 10,125.00 | 74.00% | 3,375.00 | Bill at 95% Complete |
| B3150 | 0 | APPLIANCES | 7,000.00 | 0.00 | 0.00 | | 7,000.00 | 10,596.20 | | 10,986.20 | 58.68% | 5,013.80 | Bill at 95% Complete |
|  |  |  |  | 0.00 | 0.00 |  | 7,000.00 | 0.00 |  | 0.00 | 0.00% | 7,000.00 | (THIS PERIOD) |

RDCI 80-8869 2013-05-08 Vouchers (From 103 To 123)DRAW 6

JMA  00062

# CONTINUATION SHEET

Special Form - 2, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

SPECIAL FORM - 3

PROJECT NAME: BENBOW
BDTS JOB NO. 60-1669

APPLICATION NO.: 123-73/0285
APPLICATION DATE: 05/24/13
PERIOD TO: 05/24/13

ARCHITECT'S PROJECT NUMBER:

Page 2 of 2

| ITEM NO. | X-REF | DESCRIPTION OF WORK | SCHEDULED VALUE | FROM PREVIOUS APPLICATION C.O.+REV. | CHANGE ORDER (C.O.) | ADDITIONS (REV.) | CURRENT BUDGET (c=d+e+f) | WORK COMPLETED FROM PREVIOUS APPLICATION | THIS PERIOD | MATERIALS PRESENTLY STORED (NOT IN G,O,H) | TOTAL COMPLETED AND STORED TO DATE (G=H+I+J) | % (J/) | BALANCE TO FINISH (F-J) | TOTAL RETAINAGE (FROM PREVIOUS APPLICATION) THIS PERIOD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B3151 | 0 | PAINTING | 12,000.00 | 1,000.00 | | | 13,000.00 | 7,600.00 | 600.00 | | 7,800.00 | 60.00% | 5,200.00 | 84 @ 95% Complete |
| B3153 | 0 | CARPETING | 7,000.00 | 0.00 | | | 7,000.00 | 0.00 | | | 0.00 | 0.00% | 7,000.00 | 84 @ 95% Complete |
| B3160 | 0 | LANDSCAPING | 12,000.00 | 0.00 | | | 12,000.00 | 0.00 | | | 0.00 | 0.00% | 12,000.00 | 84 @ 95% Complete |
| B3163 | 0 | FINISH GRADING | 2,000.00 | 0.00 | | | 2,000.00 | 0.00 | | | 0.00 | 0.00% | 2,000.00 | 84 @ 95% Complete |
| B3170 | 0 | CLEAN UP / HAUL | 2,400.00 | (500.00) | | | 2,300.00 | 1,800.00 | | | 1,800.00 | 78.26% | 500.00 | 84 @ 95% Complete |
| B3181 | 0 | PERMIT & FEES | 300.00 | | | | 300.00 | 300.00 | | | 300.00 | 100.00% | 0.00 | 84 @ 95% Complete |
| B3225 | 0 | GATES | 8,000.00 | | | | 8,000.00 | | | | 0.00 | 0.00% | 8,000.00 | 84 @ 95% Complete |
| B3270 | 0 | COUNTER TOPS | 9,000.00 | | | | 9,000.00 | 6,831.65 | | | 6,831.65 | 75.91% | 2,168.35 | 84 @ 95% Complete |
| B3325 | 0 | SEWER - ONSITE | 2,500.00 | | | | 2,500.00 | 2,000.00 | | | 2,000.00 | 80.00% | 500.00 | 84 @ 95% Complete |
| B3345 | 0 | CROWN MOLDING | 4,000.00 | | | | 4,000.00 | 4,000.00 | | | 4,000.00 | 100.00% | 0.00 | 84 @ 95% Complete |
| B3392 | 0 | HANDRAIL | 12,000.00 | | | | 12,000.00 | 12,000.00 | | | 12,000.00 | 100.00% | 0.00 | 84 @ 95% Complete |
| B3910 | 0 | SUPERVISION | 21,000.00 | | | | 21,000.00 | 21,200.00 | | | 21,200.00 | 96.25% | (4,000.00) | 84 @ 95% Complete |
| B4017 | 0 | LABOR | 700.00 | | | | 700.00 | 350.00 | | | 350.00 | 50.00% | 350.00 | 84 @ 95% Complete |
| B4024 | 0 | TEMP. FACILITIES | 3,600.00 | 500.00 | | | 4,100.00 | 4,076.61 | | | 4,076.61 | 99.41% | 23.39 | 84 @ 95% Complete |
| B4032 | 0 | GENERAL LIAB. INS | 3,000.00 | 0.00 | | | 3,000.00 | 3,000.00 | | | 3,000.00 | 100.00% | 0.00 | 84 @ 95% Complete |
| B4400 | 0 | GENERAL LINE IN | 6,000.00 | 0.00 | | | 6,000.00 | 1,900.00 | | | 1,900.00 | 31.67% | 4,100.00 | 84 @ 95% Complete |
| 0 | | CONTINGENCY | 0.00 | 0.00 | | | 0.00 | 0.00 | | | 0.00 | 0.00% | 0.00 | 84 @ 95% Complete |
| 0 | | | 0.00 | 0.00 | | | 0.00 | 0.00 | | | 0.00 | 0.00% | 0.00 | 84 @ 95% Complete |
| 0 | | | 0.00 | 0.00 | | | 0.00 | 0.00 | | | 0.00 | 0.00% | 0.00 | 84 @ 95% Complete |
| | | **GRAND TOTAL** | **508,800.00** | **15,000.00** | **0.00** | **0.00** | **523,800.00** | **356,738.29** | **450.00** | **0.00** | **357,133.29** | **68.18%** | **166,661.71** | **0.00** |

c/o #2

Reflects

final rebate

Amount completed

JMA 00063